

Brad D. Rose (BR-2740)
Dyan Finguerra-DuCharme (DF-9228)
Madelon A. Gauthier (MG-4687)
Ryan S. Klarberg (RK-4719)
Pryor Cashman LLP
7 Times Square
New York, New York 10036
*Attorneys for Plaintiffs Kanye West and Mascotte Holdings, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KANYE WEST and MASCOTTE HOLDINGS, INC., <br><br> *Plaintiffs,* <br><br> - against - <br><br> DAVID P. McENERY, JR., ROBBIE E. C. A. HONTELE, HARRY WILLS, AL RA, JOHN DOES 1 through 50, IAIN CRAIG, 0DAYCOINS.COM, DAVE AND LOUIS d/b/a POOL.COINYE.PW, ALEX CACCIAMANI, RICHARD McCORD, PATRICK AUSTIN, MARTIN GASNER, XNIGMA.COM, BEEDUI, INC., and JANE DOES 1 through 50, <br><br> *Defendants.* | Civil Action No. 14 CV 250 <br><br> **AMENDED COMPLAINT** <br><br> **DEMAND FOR** <br> <u>**JURY TRIAL**</u> |

Plaintiffs Kanye West and Mascotte Holdings, Inc. (collectively, "Mr. West" or "Plaintiffs"), by their attorneys Pryor Cashman LLP, allege as follows against Defendants David P. McEnery, Jr., Robbie E. C. A. Hontele, Harry Wills, Al Ra d/b/a Coinyetheco.in, John Does 1 through 50 (collectively, the "Defendants"), Iain Craig a/k/a Jonny Bravo, 0daycoins.com, Dave and Louis d/b/a Pool.coinye.pw, Alex Cacciamani d/b/a Coinye-exchange.com, Richard McCord, Patrick Austin d/b/a Cryptorush.in, Martin Gasner d/b/a Crycurex.com, Xnigma.com, BeeDui, Inc., and Jane Does 1 through 50 (collectively, the "Contributory Defendants"):

## NATURE OF ACTION

1.     This is an action for willful trademark infringement, unfair competition, dilution and right of publicity violations, among a score of other blatant statutory and common law violations.  Defendants have willfully and admittedly traded upon the goodwill and notoriety of Kanye West, one of the most famous entertainers and brand names in the world.   Without hesitation, Defendants have usurped Mr. West's name and likeness for the sole purpose of propping up the perceived "value" of the Defendants' "digital coin mine" and its "cryptocurrency."[1]   In interviews with the press, Defendants brazenly admit that they adopted the marks COINYE WEST, COINYE and COYE to directly associate their newly minted cryptocurrency with Mr. West.   For example, Defendants have publicly stated that: (i) they "chose to represent Kanye because he is and always has been a trendsetter, and he's always keeping things unique;" and (ii) they were "really not sure how Kanye [was] gonna react."   Moreover, Defendants cowardly remained anonymous because "[Kanye West] really isn't someone we want to piss off" and that they would "love if Kanye named dropped 'Coinye' . . . We don't want to pay him off to name check us, but it'd be sick if he does so." Defendants also boldly asserted that "Anarcho-capitalism is coming, it can't be stopped. Whether it has a symbol that looks like a dollar, a dog, or a cartoon picture of a rapper, it's all the same thing."  True and correct copies of online articles quoting Defendants are attached hereto as Exhibit A.

On January 7, 2014, Defendants had an initial public offering of a "block" of cryptocurrency called, interchangeably, COINYE WEST, COINYE and COYE on their website located at <coinyeco.in>.   Although Defendants could have chosen any name for their

---

[1] "Cryptocurrency" or "bitcoins" is a digitized monetary exchange not tied to a specific country or centralized bank. The value is determined by supply and demand – it only has value if consumers "mine" the currency and exchanges trade it.

cryptocurrency, they deliberately chose to trade upon the goodwill associated with Mr. West by adopting names that are admitted plays on his name. Mr. West has been inextricably tied to Defendants' cryptocurrency, as practically every online article and blog post about the COINYE WEST currency mentions Mr. West and/or displays a photograph of Mr. West.

With each day that passes, Mr. West's reputation is irreparably harmed by the continued use of the COINYE WEST, COINYE and/or COYE marks in connection with Defendants' goods and services. Defendants have admittedly and willfully infringed upon the KANYE WEST mark and consumers are likely to mistakenly believe that Mr. West is the source of these digital coins. In fact, consumers are actually confused and mistakenly believe that Mr. West has launched the COINYE WEST cryptocurrency as reflected in dozens of tweets posted on Twitter:

> Samantha Grossman @sam_grossman 2 Jan:
> *Forget Bitcoin, because Kanye West now has a cryptocurrency and obviously it's called Coinye West*

> Romesh Dodangoda @longwaveromesh 2 Jan:
> *Kanye West now has a currency!*

> Christopher Hudson @chrishudsonjr 2 Jan:
> *Move over #Bitcoin, @kanyewest now has his own cryptocurrency called @CoinyeWest*

> Andrew Harris @amharris26 2 Jan:
> *Interest rates are at an all-time low. RT @obwax Kanye West has his own cryptocurrency and it's called Coinye West*

> Chase Graves @everettchase 2 Jan:
> *Move over bitcoin, @kanyewest is about to create the greatest digital currency of all time. Introducing: @CoinyeWest.*

> Mathew Ingram @mathewi 2 Jan:
> *shark = jumped MT @cschweitz: @KanyeWest now has his own cryptocurrency, and it's called Coinye West*

> Candace Jackson @candace_jackson 2 Jan:
> *Kanye West is getting his money right, launching his own bitcoin-inspired cryptocurrency. It's called Coinye West*

Eric Andersen @eric_andersen 2 Jan:
>    *Srsly? @kanyewest creates his own cryptocurrency, names it Coinye*
>    *West, on Twitter at @CoinyeWest*

Ashley Codianni @AshleyCodianni 2 Jan:
>    *Forget #Bitcoin, lemme get some Coinye West --> Kanye West now has*
>    *his own cryptocurrency*

Joshua Topolsky @joshuatopolsky 2 Jan:
>    *Kanye West Bitcoin clone to launch soon. Coinye West!*

Pat McKlindon @PatMcPSU 2 Jan:
>    *Speaking of "coining" and wordplay. Kanye West just made his own*
>    *version of BitCoin and named it "Coinye West"*

Noah Hirsch @noahsh 2 Jan:
>    *Is Kanye serious? He's staring his own online currency like bit-coin.*
>    *It's called Coinye-West*

Marxs @marxsismo 2 Jan:
>    *Kanye West gets his own digital currency, and it's called Coinye West //*
>    *Bigger than Yeezus*

Francisco Dao @TheMan 2 Jan:
>    *Bitcoin is FINISHED!!! - Kanye West now has his own cryptocurrency*
>    *and it's called Coinye West*

West Coast Sound @LAWeeklyMusic 2 Jan:
>    *All about the new Kanye West currency, which is like Bitcoin but called*
>    *CoinYe*

Gavin Millard @gmillard 2 Jan:
>    *Kanye West Now Has His Own Cryptocurrency and It's Called Coinye*
>    *West. WTF.*

BBC Radio 1Xtra @1Xtra 5 Jan:
>    *Oh Yeezus. Not even kidding you @kanyewest is going to have his own*
>    *CURRENCY, the "Coinye West"*

Simon Krätschmer @Bimon 6 Jan:
>    *The cryptocoin to end them all: "Coiny West" - the Kayne West Coin*

These are just a sampling of the tweets and evidence of actual confusion to date. *See infra* at

¶ 69 (additional tweets evidencing actual confusion).

Defendants have cowardly sought to remain anonymous by using Registry privacy services and other means to shield their identities.  The expedited discovery ordered by the Court, however, has allowed Plaintiffs to ascertain the identities of many of the previous Doe Defendants.  While that discovery continues, and Plaintiffs are confident that they will discover the names of other Defendants and Contributory Defendants involved with the COINYE cryptocurrency, Plaintiffs hereby amend the Complaint to identify the individuals it has learned of so far.

Accordingly, for the reasons set forth herein, the Defendants must be held accountable for these egregious, willful and wanton activities.

## PARTIES

2.      Plaintiff Kanye West is a citizen and resident of the State of New York.

3.      Plaintiff Mascotte Holdings, Inc. is a California corporation with its principal place of business in New York, New York.

4.      Upon information and belief, Defendant David P. McEnery, Jr. is a citizen and resident of the City of Breckenridge in the State of Colorado and is engaged in commerce in the United States including within this judicial district.

5.      Upon information and belief, Defendant Robbie E. C. A. Hontele is a citizen of Netherlands and is engaged in commerce in the United States including within this judicial district.

6.      Upon information and belief, Defendant Harry Wills is a citizen of the United Kingdom, and is engaged in commerce in the United States including within this judicial district.

7.      Upon information and belief, Defendant Al Ra is a citizen of the United Kingdom, and is engaged in commerce in the United States including within this judicial district.

8.      Upon information and belief, Defendant Iain Craig a/k/a Jonny Bravo ("Craig") is a citizen of the United Kingdom and is engaged in commerce in the United States including within this judicial district.  The only contact information provided on the <coinyecasino.com> website is an email address of support@coinyecasino.com.  Craig shields his contact information by using a privacy service provided by the registrar.  Through Plaintiffs' discovery, they have learned, upon information and belief, that Craig uses the email address <coldcity@gmail.com>. Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Craig.

9.      Defendant 0daycoins.com operates a digital currency exchange located at <0daycoins.com> and is engaged in commerce in the United States including within this judicial district.  Defendant 0daycoins.com shields its contact information by using a privacy service provided by the registrar.  Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Defendant 0daycoins.com.

10.     Upon information and belief, Defendants Dave and Louis ("Dave and Louis") operate COINYE cryptocurrency pool websites located at <pool.coinye.pw>, <coinye.pw> and <coinye.suchpool.pw> and are engaged in commerce in the United States including within this judicial district. There is no physical address provided on the <pool.coinye.pw>, <coinye.pw> and <coinye.suchpool.pw> websites.     Defendants Dave and Louis use the emails <eth1@suchpool.pw> and <sid@suchpool.pw>.  Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Defendants Dave and Louis.

11.     Upon information and belief, Defendant Alex Cacciamani is a citizen of New Zealand and is engaged in commerce in the United States including within this judicial district. There is no contact information provided on the <coinye-exchange.com> website for Defendant

Cacciamani. Defendant Cacciamani shields his contact information by using a privacy service provided by the registrar. Upon information and belief, Defendant Cacciamani uses the email address <alexfour@orcon.net.nz>. Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Defendant Cacciamani.

12.     Upon information and belief, Defendant Richard McCord is engaged in commerce in the United States including within this judicial district. Through Plaintiffs' discovery, they have learned, upon information and belief, that McCord is a citizen and resident of the City of Ojai in the State of California, and McCord uses the email addresses <ares300@aol.com> and <dogecoincom@obscure.me>.

13.     Upon information and belief, Defendant Patrick Austin operates a digital currency exchange located at <cryptorush.in> and is engaged in commerce in the United States including within this judicial district. Upon information and belief, Defendant Austin is a citizen of the United Kingdom. Specifically, the Whois search for <cryptorush.in> provides the address 70 Sloe Lane, Crundale, Kent, GB CT4 7JX and the email <info@cryptorush.in>.

14.     Defendant Martin Gasner operates a digital currency exchange located at <crycurex.com> and is engaged in commerce in the United States including within this judicial district. According to the Whois search for <crycurex.com>, Defendant Gasner is a citizen of Slovakia, with an address at Agatova 4, Zilina, Slovakia 01001 and uses the email <crycurex@gmail.com>.

15.     Defendant Xnigma.com operates a digital currency exchange located at <xnigma.com> and is engaged in commerce in the United States including within this judicial district. There is no contact information provided on the <xnigma.com> website except for the email address <support@xnigma.com>. Defendant Xnigma.com shields its contact information

by using a privacy service provided by the registrar. Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Defendant Xnigma.com.

16.     Defendant BeeDui, Inc. ("BeeDui") operates a digital currency exchange located at <beedui.com> and is engaged in commerce in the United States including within this judicial district. There is no contact information provided on the <beedui.com> website except for the email addresses <beedui@foxmail.com>, <account@beedui.com>, <support@beedui.com>, <cnysupport@beedui.com>, and <coinsupport@beedui.com>. According to the Whois search for <beedui.com>, Defendant BeeDui is a Chinese corporation located in Beijing, China. Plaintiffs believe that information obtained in discovery will lead to the identification of contact information for Defendant BeeDui.

17.     The true names and identifies of Defendants Jane Does 1-50 ("Jane Does Defendants") are unknown to Plaintiffs. The Jane Does Defendants include, but are not limited to: servers, web host companies, cryptocurrency exchanges, cryptocurrency "mining" service providers, cryptocurrency payment processors, vendors of cryptocurrency, operators of cryptocurrency "wallets", retailers accepting and/or facilitating the exchange of cryptocurrency, marketers promoting cryptocurrency, operators of cryptocurrency ledgers, "miners" of cryptocurrency, their respective web hosts, registrars and servers and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, business managers, accountants, attorneys, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing who make use of the COINYE WEST, COINYE and/or COYE marks.

18.     The true names and identities of Defendants John Does 1 through 50 ("John Doe Defendants") are unknown to Plaintiffs.  Upon information and belief, John Doe Defendants operate Internet websites located at <coinyetheco.in>, <coinyewest.com>, <coinyeco.in>, <coinyechain.info>, <coinyecoin.org>, <coinyecoin.com>, and <buycoye.com>. John Doe Defendants are engaged in commerce in the United States including within this judicial district. The only contact information provided on the websites are the following email addresses: <coinyewest@gmail.com> and <coinyecoin@outlook.com>.  John Doe Defendants also shield their contact information by using a privacy service through the registrars.  Plaintiffs believe that information obtained in discovery will lead to the identification of each John Doe Defendant's true name and will permit Plaintiffs to amend this Amended Complaint to state the same.

## JURISDICTION AND VENUE

19.     Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1125, 1332, 1338(a) and 1367, because the action involves claims arising under the Lanham Act and related state law claims.

20.     This Court has personal jurisdiction over Defendants and Contributory Defendants because they are doing business in New York, the claims at issue arise out of their transaction of business and/or supplying goods and services directed to consumers residing in New York.  These activities fall within the long-arm statute of the State of New York, CPLR § 302(a)(1).

21.     Venue is proper in this District pursuant to  28 U.S.C.  § 1391 because all Defendants and Contributory Defendants are subject to personal jurisdiction in this District because they are transacting business and committing tortious acts within the State of New York and this District.

## FACTS GIVING RISE TO THIS ACTION

A.    **Plaintiff Kanye West's Fame and Success**

22.    Mr. West is an internationally renowned musical artist, performer, media company owner, inventor, songwriter, producer, film director and fashion designer. Mr. West first rose to fame as a producer for Roc-A-Fella Records, where he achieved recognition in 2001 for his work on Jay-Z's album *The Blueprint*, as well as on hit singles for musical artists including Alicia Keys, Ludacris and Janet Jackson. To date, Mr. West has released seven full-length studio albums, and has sold over 30 million digital songs in the United States, making him one of the best-selling digital artists of all-time.

23.    Mr. West's first five albums, all of which have gone platinum, have received numerous awards, including twenty-one Grammy® Awards. Mr. West was ranked by *Billboard* magazine as one of the top 10 music producers of the decade, and was ranked third in BET's "Top Ten Rappers of the 21st Century" list. These are just a few of the industry awards and accolades that Mr. West has earned.

24.    Mr. West's talent and notoriety is recognized around the world. He has been named one of the 100 most influential people by *Time* magazine, and *Forbes* routinely lists Mr. West as one of the most successful people in the world. Mr. West is credited with refocusing rap from hardcore-gangster themes to more personal messages. Mr. West's themes and styles have had a major impact on new artists such as Drake, Kid Cudi and Lupe Fiasco, and he is recognized as transforming the hip hop industry making it more accessible to the public at large.

25.    In 2013, Mr. West released *Yeezus*, his sixth studio album, which debuted at number one on the Billboard 200. *Yeezus* sold 327,000 copies in its first week of release and

topped the charts of 30 other countries, including the United Kingdom and Australia. Within months of its release, the *Yeezus* album was certified platinum by the RIAA.

26.     Mr. West's *Yeezus* album was praised as the "Best Album of 2013" by multiple news sources, including, but not limited to, *Time* Magazine, *NPR*, *Complex*, MTV, *Entertainment Weekly* and *The New York Post*. The album was described as "transformative" by MTV stating that *Yeezus* "has dominated the discussion for the majority of the year" and is "the most confrontational, controversial and confounding release of 2013." Google even named *Yeezus* the album of the year and offered a limited number of free downloads to subscribers. True and correct copies of these rankings are attached hereto as Exhibit B.

27.     His notoriety expands well beyond the world of music, and Mr. West sets trends for everything he touches. He has launched his own clothing lines, designed sneakers with major footwear companies, and even designed high-end shoe lines for Louis Vuitton and Giuseppe Zanotti. Mr. West has also appeared in several films and television programs.

28.     Mr. West is the source of widespread unsolicited media attention wherever he goes. He has adorned the cover of dozens of magazines and has been the subject of hundreds of articles including in *The New York Times*, *Rolling Stone*, *Spin*, *Details*, *GQ*, *Time*, *Vibe*, *Complex*, among many others. Indeed, Mr. West has also been interviewed hundreds of times on television and on the radio over the past decade.

29.     Few artists have acquired the fame achieved by Mr. West. The widespread unsolicited media attention that Mr. West receives on a daily basis has made Mr. West a household name.

B.      **Plaintiffs' Use of the KANYE WEST® Mark and Other Trademarks**

30.     Plaintiffs have used the KANYE WEST mark in connection with a wide variety of goods and services since at least as early as February 2004.  Plaintiffs own numerous federal trademark registrations for the KANYE WEST mark throughout the world including six in the United States.

31.     Specifically, Mr. West owns U.S. trademark registrations for the KANYE WEST® mark for the following goods and services: Class 9 musical sound recordings; audio-visual recordings, namely, compact discs, tape cassettes, audio cassettes, audio tapes, audio discs, records, CD-Roms, video tapes, video cassettes, video discs, DVDs, DATs, MP3s, and laser discs, all featuring music; downloadable musical sound recordings; downloadable video recordings featuring music; and sunglasses (Reg. No. 3,648,799); Class 16 posters, photographic prints and photographs (Reg. No. 3,648,800); Class 25 clothing, namely, t-shirts, tank tops, and sweat shorts  (Reg. No. 3,648,801); Class 26 ornamental novelty buttons (Reg. No. 3,648,802); Class 35 on-line ordering services and on-line retail store services, electronic retailing services via computers, and retail store services available through computer communications, all of the aforesaid featuring recorded product, music related items, clothing and accessories therefor, printed promotional matter such as posters, books and publications, novelty items and ornaments (Reg. No. 3,648,803); and Class 41 music composition and transcription for others; entertainment in the nature of a live musical performer, musical band or musical group; entertainment in the nature of live performances by a musical artist, musical group or musical band; entertainment in the nature of visual and audio performances by a musical artist, musical group and musical band; entertainment, namely, live music concerts; entertainment, namely, personal appearances by a musician, musical group or musical band; entertainment services,

namely, providing a web site featuring musical performances, musical videos, photographs, and other multimedia materials; entertainment services, namely, providing prerecorded music, all online via a global computer network; and entertainment in the nature of traveling tours featuring music (Reg. No. 3,648,804).  True and accurate copies of the U.S. registrations for the KANYE WEST mark are attached hereto as Exhibit C.

32.    Mr. West also owns several pending U.S. trademark applications, including, but not limited to, Serial Nos. 86/052,406, 86/052,382, 86/052,394, 86/052,418, 86/052,376, and 86/052,433 for the CLOTHING BY KANYE WEST mark.

33.    The KANYE WEST brand is a strong commercial success.  In particular, goods and services offered for sale in connection with the KANYE WEST mark have generated sales in the hundreds of millions of dollars.  Mr. West is immensely popular with the general public as evidenced by, *inter alia*, his over 10.1 million Twitter followers, over 13 million "likes" for his Facebook page, and a regularly updated extensive Wikipedia page dedicated to him.

34.    Mr. West has invested significantly in creating, maintaining and promoting the goodwill associated with the KANYE WEST mark.  Mr. West and his media, Internet and fashion partners have spent millions of dollars advertising and promoting goods and services offered in connection with the KANYE WEST mark throughout the world.  In addition to traditional advertising, Mr. West markets and promotes his products and services through social media platforms such as Facebook, Twitter and YouTube.

35.    As a result of Mr. West's extensive sales, advertising and promotional efforts, and his consistent production of high quality goods and services, the KANYE WEST mark is famous and has garnered goodwill of incalculable value.  The KANYE WEST mark is recognized and relied upon by the consuming public as indicating one source: Mr. West.

## C.     The Advent of Digital Cryptocurrency

36.     "Bitcoin," as used herein, is a descriptive term for digital currency that uses cryptography to control the production and exchange of money.  It is a decentralized currency that does not have a bank, government or a central issuer.  Instead, Bitcoin operates as a peer-to-peer network to control the creation and issuance of new "bitcoins," regulate transactions of the virtual currency and monitor the security of the Bitcoin network.[2]  Bitcoin is denominated a "virtual currency" not backed by metal or paper, but is the result of a cryptographic process that applies computational power to decipher chains of unique computer code.  These chains of codes are then issued as a block of twenty-five bitcoins and can be exchanged, purchased and sold for non-virtual currency such as U.S. dollars or Euro.  Bitcoins have market value because of their scarcity: the amount of bitcoins that will be produced is limited according to a pre-determined mathematical algorithm.  The trading price of bitcoins has fluctuated from $80 in July 2013 to a high of $1100 in December 2013.  Currently, the value of a new bitcoin is approximately $1000.  As of November 2013, there were approximately 12 million bitcoins in existence, resulting in a total market capitalization of the currency in excess of $10 billion.

37.     The Bitcoin peer-to-peer network allows users to access an open-source computer program to which they may apply computational programs and hefty computing power to compete to solve difficult mathematical problems. The solution to one of these complex problems, or the cracking of the code, results in the reward of a newly "minted" bitcoin issued to the individual who processed that search.  Bitcoin currency is produced by these "miners" who use powerful computers to sort through this mathematical space searching for numbers that fit the algorithm.  This process is called "mining," likening the computational quest to a gold miner

---

[2] Typically bitcoin currency is spelled with lowercase while Bitcoin capitalized refers to the protocol and transaction network.

searching for a vein within a physical mine.  The work the computers do can be viewed in parallel to guessing at a lottery number: the faster the searching computers run, the better chance of guessing the right number and winning the coins.  Bitcoin mining can be done on home computers, but as the value and interest in the currency has increased, a virtual mining industry using powerful multi-million dollar computers has emerged.

38.    Since using an individual computer may take months to solve the block to generate bitcoins, individuals may join groups known as "mining pools" to collectively work to solve the blocks and distribute rewards (bitcoins) based on the work contributed.  Once mined, miners and users may store their bitcoins in a bitcoin wallet.  Bitcoin wallets currently consist of four types: (1) software wallet, which is located on a computer; (2) mobile wallet, which is located on a mobile device; (3) a digital wallet, that is hosted by an online service provider that hosts bitcoins; or (4) a paper wallet, that consists of the public and private keys on printed paper that is stored offline.

39.    Bitcoin uses a public-key cryptography, in that it uses a "public key" which is a unique address and a "private key" which is the unique identifier of that address, or a signature for the bitcoin holder.  If this private key is lost, a bitcoin is lost forever.  To perform a bitcoin transaction, the public key assigned to the bitcoin address is signed by the private key.  The public key is published to the blockchain, which records all transactions on the bitcoin network, and miners verify that the public key and private key are associated with the bitcoin address.

40.    Bitcoins can be purchased and traded through various web exchanges, such as Cryptsy and Bitstamp, whereby a user exchanges a bitcoin with a fiat currency (also known as a government backed currency like U.S. dollars or Euro) or vice-versa, or exchanges between bitcoins and other digital currencies known as "alt-currencies."  Alt currencies use similar open-

source software but distinct mining protocols and algorithms to generate new and different cryptocurrencies. The exchanges allow for investors to hedge on the bitcoin and alt currency value and miners enter the race to earn more of the ever-dwindling amount of bitcoin in the universe – banking on an increase in their value.

41.     Bitcoin was the first of the decentralized peer-to-peer network protocols called a cryptocurrency and is known as the gold standard. Other competing cryptocurrencies using similar open-source software but distinct mining protocols and algorithms have followed Bitcoin in the past few years. These competitors view the success and rapid increase in value of bitcoin and are speculating on the currency's potential for a larger retail component.

42.     Because the code that underpins bitcoin is under an open-source license, any individual with programming knowledge may become a miner, accessing the code to alter its aspects to create an entirely new currency, for free. There are over 150 new digital currencies attempting to compete with Bitcoin, some in earnest and some as marketing ploys. As the creator of the mining algorithm, a new alt-currency founder can retain a certain amount of the newly minted currency in a process known as "pre-mining," essentially hoarding it until the value increases. It has been suggested that such networks create a "pump and dump" scheme luring investors to mine the new coins and profiting once the currency gains acceptance and is widely traded.

**D.     Defendants' Illegal Activities**

43.     While bitcoins are not yet widely accepted as a form of retail payment, their appeal is gaining traction. For example, Overstock.com announced that it will start accepting the virtual currency this year. The entertainment industry, and the music industry in particular, is also beginning to recognize cryptocurrency as a form of payment. For example, Mel B, former

Spice Girl and *X-Factor* judge, has announced that consumers may use bitcoins to purchase her new single, and Snoop Dogg recently tweeted that he wants his "next record available in bitcoin."

44.    In a deliberate attempt to profit from the goodwill associated with Mr. West and the KANYE WEST brand and to "pump" up the value of its newly released cryptocurrency, Defendants are marketing, promoting, exploiting and/or mining cryptocurrency from websites located at <coinyetheco.in>, <coinyewest.com>, <coinyeco.in>, <coinyecoin.org>, <coinyecoin.com>, and <coinyechain.info> (the "Infringing Websites").   In particular, on December 29, 2013, Defendants launched a website located at <coinyewest.com> and indicated their intention to offer a block of COINYE WEST coins for mining. The <coinyewest.com> domain was later redirected to <coinyeco.in>.    Defendants soon thereafter launched <coinyetheco.in>, from which Defendants are currently marketing and promoting their cryptocurrency.  Defendants have specifically stated that their "goal with COINYE WEST is to make it easier for people to use cryptocurrency." *See* Ex. A.

45.    Upon information and belief, Defendant David P. McEnery, Jr. registered, developed and/or operated the <coinyewest.com> and <coinyeco.in> websites.

46.    Upon information and belief, the <coinyetheco.in> website is the primary COINYE cryptocurrency website, which states that "Coinyecoin [COYE]" is the "Cryptocurrency of 2014." The <coinyetheco.in> homepage asserts in large font, "Contrary to popular media opinion, we are not dead [sic] We are working hard to bring you some exciting new additions!"  A true and correct copy of printouts from the <coinyetheco.in> website as of February 26, 2014 are attached hereto as Exhibit A-2.

47.     Upon information and belief, Defendant Robbie E. C. A. Hontele is affiliated with the promotion, mining and/or development of the COINYE cryptocurrency and/or the <coinyetheco.in> website.

48.     Upon information and belief, Defendant Harry Wills is affiliated with the promotion, mining and/or development of the COINYE cryptocurrency and/or the <coinyefaucet.com> website.

49.     Upon information and belief, Defendant Al Ra is affiliated with the promotion, mining, operation and/or development of the COINYE cryptocurrency and/or the <coinyetheco.in> website.

50.     The COINYE WEST, COINYE and COYE marks are substantially similar in sight, sound, meaning and commercial impression to the KANYE WEST mark.  Defendants use the COINYE WEST, COINYE and COYE marks to solicit investors and to falsely imply that Mr. West is affiliated with, associated with and/or has endorsed the COINYE cryptocurrency.  In fact, the developers have admitted that they intended to trade upon the goodwill associated with the KANYE WEST mark and with Mr. West personally when they adopted the COINYE WEST, COINYE and COYE marks. *See* ¶ 1 & Ex. A.

51.     The Infringing Websites feature coins that resemble Mr. West wearing his signature shutter shades sunglasses below the COINYE mark:

 

52.     The <coinyewest.com> website also unlawfully exploited videos embodying the masters and the underlying compositions of Mr. West's videos. The use of the image above and Mr. West's videos heighten the likelihood that consumers would mistakenly believe that Mr. West is associated with, has sponsored and/or is affiliated with Defendants' goods and services. These actions also dilute the famous KANYE WEST trademark and violate Mr. West's right of publicity.

53.     In a further attempt to trade upon the goodwill of the KANYE WEST brand, and as additional evidence of Defendants' willfulness, Defendants emailed Plaintiffs' agents requesting "[A] few second video of [Mr. West] telling us he wants coinyes." In the same January 4, 2014 email chain, Defendants wrote:

> I'm not talking on any telephone and neither is anyone else involved.  If you want to talk, contact me in email. We're anonymous and we're keeping it that way. Also, I'm not giving up a single millionth of a percent until i get some kind of verification that kanye actually knows a deal is being made. I still don't trust you, and I sure as hell don't trust lawyers.

A true and correct copy of this email exchange is attached hereto as Exhibit D.

54.     In response to this inquiry, Mr. West's counsel sent a letter to Defendants demanding that they deactivate the Infringing Websites and refrain from any further infringing conduct.  A true and accurate copy of the letter sent to Defendants, dated January 6, 2014, is attached hereto as Exhibit E.  Instead of complying, Defendants published the demand letter on blogs and, upon information and belief, provided the letter to various media outlets, thereby making Defendants' conduct the subject of widespread media attention, including articles on the *Wall Street Journal* blog and the *Time* Magazine blog as well as online versions of national papers such as *The New York Post*.  A true and correct copy of the media attention associated with Defendants' receipt of the demand letter is attached hereto as Exhibit F.

55.     In willful disregard of Mr. West's intellectual property rights, of which Defendants were on actual notice, Defendants modified the <coinyewest.com> and <coinyeco.in> websites and rescheduled the launch date for the cryptocurrency from January 11, 2014 to January 7, 2014.  A true and correct copy of the <coinyewest.com> website as of January 5, 2014 is attached hereto as Exhibit G, and a true and correct copy of the <coinyewest.com> website as of January 7, 2014 is attached hereto as Exhibit H.  Upon information and belief, Defendants launched websites located at <coinyetheco.in>, <coinyefaucet.com>, <coinyecoin.org> and <coinyecoin.com> to further market and promote their infringing activities.  *See* Ex. A-2.

56.     During the launch of the COINYE block, upon information and belief, consumers chose a pool where they accessed a miner program aptly called "COINYEMINER."  Upon information and belief, coins mined by the individual users were automatically sent to their software wallet.  Upon information and belief, 666,666 COINYE WEST coins were released for mining, a number that is closely associated with Mr. West and his *Yeezus* album.

57.     While some nominal changes have been made to the Infringing Websites in response to the demand letter, given Mr. West's wide-ranging entrepreneurial accomplishments, consumers are still likely to believe, and upon information and belief, have mistakenly believed, that Mr. West is the source of COINYE WEST, COINYE and/or COYE coins or is affiliated with, or has sponsored or endorsed the cryptocurrency.  At the very least, Defendants' conduct dilutes the KANYE WEST mark by blurring and tarnishment.

58.     Upon information and belief, Defendants' mine is unprofessional and has been criticized by the cryptocurrency community.  Critics have noted that Defendants engaged in deceptive practices by engaging in unpublicized, pre-mining activity, such as hoarding a portion

of the coins to themselves. Defendants' mine has also been called a "pump and dump" scam, with one commentator noting: "Coinye West coin is 100% fraud from the get go." An example of criticism that Defendants' mine has received is attached hereto as Exhibit I.

**E.     Contributory Defendants' Illegal Activities**

59.     Upon information and belief, Defendant Craig launched the <coinyecasino.com> and <coinyecasino.l8.lv> websites to exploit the KANYE WEST mark and the media attention the Defendants' infringing activities have received. Upon information and belief, Craig used the pseudonym "Jonny Bravo" to communicate with Plaintiffs via email. Upon information and belief, the <coinyecasino.com> and <coinyecasino.l8.lv> websites allow users to participate in online gambling using COINYE coins. In response to Plaintiffs' demand letter, Craig brazenly stated: "no further actions will be taken until a personal video on behalf of Kanye West is published in which he kindly asks us to remove roulette wheel based on his geopolitical, religious or any other possible insults, personality damages of any sort or inconveniences this roulette wheel has provided." A true and correct copy of Craig's email is attached hereto as Exhibit J. Defendant Craig has further publicly stated that "the CoinyeCasino.com team is prepping even more games for Coinye users" and has sarcastically stated that it "would love to give [Plaintiffs' counsel] some house credit for a few free roulette spins." A true and correct copy of the article quoting Craig is attached hereto as Exhibit K.

60.     Upon information and belief, Defendant 0daycoins.com is a digital currency exchange that has recognized Defendants' cryptocurrency and is allowing the cryptocurrency to be traded on its exchange. Upon information and belief, Defendant 0daycoins.com earns commissions when trades are made and is otherwise profiting from listing the currency on the <0daycoins.com> exchange. By recognizing the COINYE WEST, COINYE and/or COYE

cryptocurrency, Defendant 0daycoins.com is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and is engaging in willful contributory trademark infringement and willful contributory unfair competition because without its actions, the cryptocurrency would have no value.

61.     Upon information and belief, Defendants Dave and Louis own, operate and/or administer <pool.coinye.pw>, <coinye.pw> and <coinye.suchpool.pw>, digital currency mining pool websites that have recognized Defendants' cryptocurrency and allowed the cryptocurrency to be mined and/or "pooled." Upon information and belief, Defendants Dave and Louis earn and/or will earn a commission in the form of a fee from the pools that they manage and/or control and are otherwise profiting from allowing the cryptocurrency to be mined and/or pooled. By recognizing the COINYE WEST, COINYE and/or COYE cryptocurrency, Defendants Dave and Louis are engaging in willful trademark infringement and unfair competition by using the infringing marks on the websites and engaging in willful contributory trademark infringement and willful contributory unfair competition.

62.     Upon information and belief, Defendant Cacciamani owns and operates <coinye-exchange.com>, a digital currency exchange that has recognized Defendants' cryptocurrency and allowed the cryptocurrency to be traded on its exchange. Upon information and belief, Defendant Cacciamani earns and/or will earn commissions when trades are made and are otherwise profiting from listing the currency on the <coinye-exchange.com> exchange. By recognizing the COINYE WEST, COINYE and/or COYE cryptocurrency, Defendant Cacciamani is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and is engaging in willful contributory trademark infringement

and willful contributory unfair competition because without his actions, the cryptocurrency would have no value.

63.   Upon information and belief, Defendant McCord is the operator, registrant and/or host of the following websites that are utilizing and/or exploiting the COINYE WEST, COINYE, COYE marks: <minecoinye.com>, <coinyemining.com>, <coinyegames.com>, <coinyewallet.com>, <coinyestore.com>, <buycoinyes.com>, <buycoinye.net>, <buy-coinye.com>, <betcoinye.com>, <coinyespin.com>, <coinyeroulette.com>, <coinyegambling.com>, <coinyepoker.com>, <coinye-dice.com>, <coinyedice.com>, <getcoinye.com>, <coinyeshop.com>, <freecoinye.com>, and <fuckcoinye.com>.   Upon information and belief, Defendant McCord registered these websites with the bad faith intent to profit as evidenced by, *inter alia*: (i) his use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domains consist of a name that is associated with Plaintiffs; (iii) McCord is using the domains to perpetuate willful trademark infringement; and (iv) McCord's infringing activities are commercial.

64.   Upon information and belief, Defendant Patrick Austin d/b/a Cryptorush.in owns and/or operates a digital currency exchange that has recognized Defendants' cryptocurrency and is allowing the cryptocurrency to be traded on its exchange.   Upon information and belief, Defendant Austin earns commissions when trades are made and is otherwise profiting from listing the currency on the <cryptorush.in> exchange.   By recognizing the COINYE WEST, COINYE and/or COYE cryptocurrency, Defendant Austin is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and engaging in willful contributory trademark infringement and willful contributory unfair competition because without its actions, the cryptocurrency would have no value.

65.     Upon information and belief, Defendant Martin Gasner d/b/a Crycurex.com owns and/or operates a digital currency exchange that has recognized Defendants' cryptocurrency and is allowing the cryptocurrency to be traded on its exchange.   Upon information and belief, Defendant Gasner earns commissions when trades are made and is otherwise profiting from listing the currency on the <crycurex.com> exchange.   By recognizing the COINYE WEST, COINYE and/or COYE cryptocurrency, Defendant Gasner is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and engaging in willful contributory trademark infringement and willful contributory unfair competition because without its actions, the cryptocurrency would have no value.

66.     Upon information and belief, Defendant Xnigma.com is a digital currency exchange that has recognized Defendants' cryptocurrency and is allowing the cryptocurrency to be traded on its exchange.   Upon information and belief, Defendant Xnigma.com earns commissions when trades are made and are otherwise profiting from listing the currency on the <xnigma.com> exchange.   By recognizing the COINYE WEST, COINYE and/or COYE cryptocurrency, Defendant Xnigma.com is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and engaging in willful contributory trademark infringement and willful contributory unfair competition because without its actions, the cryptocurrency would have no value.

67.     Upon information and belief, Defendant BeeDui, Inc. owns and/or operates a digital currency exchange that has recognized Defendants' cryptocurrency and is allowing the cryptocurrency to be traded on its exchange.   Upon information and belief, Defendant BeeDui earns commissions when trades are made and are otherwise profiting from listing the currency on the <beedui.com> exchange.   By recognizing the COINYE WEST, COINYE and/or COYE

cryptocurrency, Defendant BeeDui is engaging in willful trademark infringement and unfair competition by using the infringing marks on the website and engaging in willful contributory trademark infringement and willful contributory unfair competition because without its actions, the cryptocurrency would have no value.

68.    Jane Does Defendants exploit and recognize the COINYE WEST, COINYE and/or COYE cryptocurrency in their functions as servers, web host companies, cryptocurrency exchanges, cryptocurrency "mining" service providers, cryptocurrency payment processors, vendors of cryptocurrency, operators of cryptocurrency "wallets", retailers accepting and/or facilitating the exchange of cryptocurrency, marketers promoting cryptocurrency, operators of cryptocurrency ledgers and "miners" of cryptocurrency.  Defendants have published Plaintiffs' letter demanding that Defendants cease all use of the marks COINYE WEST, COINYE and/or CONYE on the grounds that such use infringes and dilutes Mr. West's famous and distinctive trademark among other violations.  The demand letter has been posted to dozens of websites and discussions thereof are widespread in national publications, among the online community and on social media.   Upon information and belief, Jane Does Defendants 1 through 50, in wanton disregard of Plaintiffs' rights, have aided, abetted and assisted Defendants in their infringing activities by continuing to provide the services identified.

**F.    Plaintiffs Are Suffering Irreparable Harm**

69.    Consumers are likely to mistakenly believe that Mr. West is the source of the COINYE WEST, COINYE and/or COYE coins or is affiliated with, or has sponsored or endorsed the cryptocurrency.  In fact, consumers are actually confused as reflected in tweets posted on Twitter:

Samantha Grossman @sam_grossman 2 Jan:
*Forget Bitcoin, because Kanye West now has a cryptocurrency and obviously it's called Coinye West*

Romesh Dodangoda @longwaveromesh 2 Jan:
*Kanye West now has a currency!*

Christopher Hudson @chrishudsonjr 2 Jan:
*Move over #Bitcoin, @kanyewest now has his own cryptocurrency called @CoinyeWest*

Andrew Harris @amharris26 2 Jan:
*Interest rates are at an all-time low. RT @obwax Kanye West has his own cryptocurrency and it's called Coinye West*

G-J van Rooyen @gvrooyen 2 Jan:
*Looks as if @simondlr's prediction is still on track: Kanye West is launching a cryptocurrency*

Chase Graves @everettchase 2 Jan:
*Move over bitcoin, @kanyewest is about to create the greatest digital currency of all time. Introducing: @CoinyeWest.*

Mathew Ingram @mathewi 2 Jan:
*shark = jumped MT @cschweitz: @KanyeWest now has his own cryptocurrency, and it's called Coinye West*

Maya Baratz @mbaratz 2 Jan:
*Well, Bitcoin and Dogecoin has been Kanye'd. Literally. Enter Coinye*

Evelyn Rusli @EvelynRusli 2 Jan:
*No. Folks, meet Coinye, Bitcoin has been Kanyed*

Candace Jackson @candace_jackson 2 Jan:
*Kanye West is getting his money right, launching his own bitcoin-inspired cryptocurrency. It's called Coinye West*

Eric Andersen @eric_andersen 2 Jan:
*Srsly? @kanyewest creates his own cryptocurrency, names it Coinye West, on Twitter at @CoinyeWest*

Ashley Codianni @AshleyCodianni 2 Jan:
*Forget #Bitcoin, lemme get some Coinye West --> Kanye West now has his own cryptocurrency*

Joshua Topolsky @joshuatopolsky 2 Jan:
*Kanye West Bitcoin clone to launch soon. Coinye West!*

Larry Dignan @ldignan 2 Jan:
*Latest sign of Bitcoin stupidity. Kanye West his own cryptocurrency Coinye West*

Shaun Olarte @seanzyville 2 Jan:
*Kanye Shows Up Obama By Getting His Face On Currency First: Coinye West Is The Newest Pseudo Bitcoin*

Pat McKlindon @PatMcPSU 2 Jan:
*Speaking of "coining" and wordplay. Kanye West just made his own version of BitCoin and named it "Coinye West"*

Noah Hirsch @noahsh2 2 Jan:
*Is Kanye serious? He's staring his own online currency like bit-coin. It's called Coinye-West*

Marxs @marxsismo 2 Jan:
*Kanye West gets his own digital currency, and it's called Coinye West // Bigger than Yeezus*

Francisco Dao @TheMan 2 Jan:
*Bitcoin is FINISHED!!! - Kanye West now has his own cryptocurrency and it's called Coinye West*

West Coast Sound @LAWeeklyMusic 2 Jan:
*All about the new Kanye West currency, which is like Bitcoin but called CoinYe*

Gavin Millard @gmillard 2 Jan:
*Kanye West Now Has His Own Cryptocurrency and It's Called Coinye West. WTF.*

ST Communities @STCommunities 3 Jan:
*.@kanyewest has new cryptocurrency named after him - Coinye West*

CoinDesk @coindesk 3 Jan:
*Flamboyant artist Kanye West now has had a digital currency named after him*

BBC Radio 1Xtra @1Xtra 5 Jan:
*Oh Yeezus. Not even kidding you @kanyewest is going to have his own CURRENCY, the "Coinye West"*

Simon Krätschmer @Bimon 6 Jan:
**The cryptocoin to end them all: "Coiny West" - the Kayne West Coin**

A true and correct copy of the Twitter feed is attached hereto as Exhibit L.

70.    Mr. West will suffer irreparable harm to his business reputation and goodwill associated with the brand because he has no control over the cryptocurrency. This is even more so here because the identities of Defendants are unknown, and they are luring consumers to purchase a digital currency through the use of marks that are substantially similar to the KANYE WEST mark and use of Mr. West's name and likeness.

71.    Mr. West will also suffer irreparable harm because use of the COINYE WEST, COINYE and/or COYE marks dilutes the distinctiveness of the famous KANYE WEST mark.

72.    Mr. West will also suffer irreparable harm because as the infringing coins are mined, they will enter the digital marketplace and may be nearly impossible to retrieve as they will reside on computers of anonymous users.

## FIRST CLAIM
### (Violation of Right of Privacy and Publicity, New York Civil Rights Law § 51)
### (Against Defendants and Craig)

73.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 72 of the Amended Complaint as if fully set forth herein.

74.    Defendants and Craig have used Mr. West's name, image and likeness within the State of New York for advertising and/or for the purpose of trade.

75.    Defendants and Craig's use of Mr. West's name, image and likeness has been without the written or oral authorization of Mr. West or anyone authorized by him to give such authorization.

76.    Defendants and Craig's use of Mr. West's name, image and likeness has caused injury to him in an amount to be proven at trial.

77.     Defendants and Craig's use of Mr. West's name, image and likeness in the manner described herein is forbidden and/or unlawful pursuant to Section 50 of New York Civil Rights Law.

78.     Mr. West therefore demands exemplary damages under Section 51 of New York Civil Rights Law.

79.     Furthermore, Section 51 of the New York Civil Rights Law provides a right to injunctive relief to restrain the unauthorized use of a person's name for purposes of advertising or trade purposes within New York State.

80.     The acts of Defendants and Craig have caused and are causing great and irreparable harm and damage to Mr. West, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

81.     Mr. West therefore demands that Defendants and Craig be enjoined and restrained pursuant to Section 51 of the Civil Rights law of the State of New York from using Mr. West's name for advertising purposes or purposes of trade.

## SECOND CLAIM
### (Federal Trademark Infringement, 15 U.S.C. § 1114)
### (Against Defendants and Contributory Defendants)

82.     Plaintiffs hereby repeat and reallege Paragraphs 1 through 81 of the Amended Complaint as if fully set forth herein.

83.     These defendants have used in commerce, without Plaintiffs' permission, the COINYE WEST, COINYE and COYE marks in a manner that is likely to cause confusion, mistake or deception with respect to Plaintiffs' KANYE WEST mark, and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of Plaintiffs and/or their goods, services and commercial activities, on

the one hand, with these defendants and/or their respective goods, services or commercial activities, on the other hand.

84.    These defendants' acts constitute infringement of the KANYE WEST mark under 15 U.S.C. § 1114.

85.    As a direct and proximate result of these defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill.  These defendants will continue to use, unless restrained, the COINYE WEST, COINYE and COYE marks or marks confusingly similar to the KANYE WEST mark and will cause irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining these defendants, their respective officers, agents, and employees, and all persons acting in concert with these defendants, from engaging in further acts of infringement.

86.    Plaintiffs are further entitled to recover from these defendants the actual damages that they sustained and/or are likely to sustain as a result of these defendants' wrongful acts.

87.    Plaintiffs are further entitled to recover from these defendants the gains, profits and advantages that these defendants have obtained as a result of their wrongful acts.

88.    Because of the willful nature of these defendants' wrongful acts, Plaintiffs' are entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

**THIRD CLAIM**
**(Contributory Trademark Infringement)**
**(Against Jane Doe Defendants)**

89.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 88 of the Amended Complaint as if fully set forth herein.

90.     Jane Doe Defendants are engaging in infringing conduct including but not limited to the use of the COINYE WEST, COINYE and COYE marks in violation of the Lanham Act.

91.     Upon information and belief, Jane Doe Defendants have deliberately disregarded Plaintiffs' counsel's notification of the Infringing Websites and have otherwise consciously avoided learning about the full extent of the infringing activity that is continuing on the Infringing Websites.

92.     Jane Doe Defendants have materially encouraged, enabled, and contributed to the Infringing Websites by providing hosting services.

93.     The acts of Jane Does Defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

94.     As a direct and proximate result of Jane Does Defendants' actions as stated herein, Plaintiffs have suffered damage to their reputation and damage to the goodwill associated with the KANYE WEST mark.

## FOURTH CLAIM
### (Contributory Trademark Infringement)
### (Against Contributory Defendants)

95.     Plaintiffs hereby repeat and reallege Paragraphs 1 through 94 of the Amended Complaint as if fully set forth herein.

96.     The Contributory Defendants are engaging in infringing conduct including but not limited to the use of the COINYE WEST, COINYE and COYE marks in violation of the Lanham Act.

97.     The Contributory Defendants have deliberately disregarded Plaintiffs' counsel's notification of the Infringing Websites and has otherwise consciously avoided learning about the full extent of the infringing activity that is continuing on the Infringing Websites.

98.     Upon information and belief, the Contributory Defendants have materially encouraged, enabled, and contributed to the Infringing Websites by engaging in the operation, exchange, sale, transfer and/or purchase of COINYE cryptocurrency.

99.     The acts of the Contributory Defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

100.    As a direct and proximate result of the Contributory Defendants' actions as stated herein, Plaintiffs have suffered damage to their reputation and damage to the goodwill associated with the KANYE WEST mark.

### FIFTH CLAIM
### (Federal Unfair Competition, 15 U.S.C. § 1125(a))
### (Against Defendants and Contributory Defendants)

101.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 100 of the Amended Complaint as if fully set forth herein.

102.    The COINYE WEST, COINYE and COYE marks are substantially similar to Plaintiff West's given name, Kanye West, and his KANYE WEST trademark.

103.    Consumers identify the mark KANYE WEST exclusively with Plaintiff Kanye West.

104.    These defendants' conduct as alleged herein is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Mr. West with these defendants' respective goods and/or services.

105.    Mr. West does not now and has never sponsored or approved or authorized these defendants' use of the COINYE WEST, COINYE or COYE marks.

106.    These defendants' conduct is willful and deliberate and done with the intent to unfairly commercially benefit from the goodwill association with Mr. West personally and the KANYE WEST brand name.

107.    These defendants' unfair competition has caused and is causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

108.    As a direct and proximate result of these defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill.  These defendants' will continue to use, unless restrained, the COINYE WEST, COINYE and COYE marks or marks confusingly similar to the KANYE WEST mark and will cause irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining these defendants, their respective officers, agents, and employees, and all persons acting in concert with these defendants, from engaging in further acts of infringement.

109.    Plaintiffs are further entitled to recover from these defendants the actual damages that they sustained and/or are likely to sustain as a result of these defendants' wrongful acts.

110.    Plaintiffs are further entitled to recover from these defendants the gains, profits and advantages that these defendants have obtained as a result of their wrongful acts.

111.    Because of the willful nature of these defendants' wrongful acts, Plaintiffs' are entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## SIXTH CLAIM
### (Contributory Unfair Competition)
### (Against Jane Does Defendants)

112.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 111 of the Amended Complaint as if fully set forth herein.

113.    The COINYE WEST, COINYE and COYE marks are substantially similar to Plaintiff West's given name, Kanye West, and his KANYE WEST trademark.

114.    Consumers identify the mark KANYE WEST exclusively with Plaintiff Kanye West .

115.    Defendants' conduct as alleged herein is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Mr. West with Defendants' goods and services.

116.    Mr. West does not now and has never sponsored or approved or authorized Defendants' use of the COINYE WEST, COINYE or COYE marks.

117.    Defendants' conduct is willful and deliberate and done with the intent to unfairly commercially benefit from the goodwill association with Mr. West personally and the KANYE WEST brand name.

118.    Jane Does Defendants have deliberately disregarded Plaintiffs' counsel's notification of the Infringing Websites and have otherwise consciously avoided learning about the full extent of the infringing activity that is continuing on the Infringing Websites.

119.    Jane Does Defendants have materially encouraged, enabled, and contributed to the Infringing Websites by providing hosting services.

120.   The acts of Jane Does Defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

121.   As a direct and proximate result of Jane Does Defendants' actions as stated herein, Plaintiffs have suffered damage to their reputation and damage to the goodwill associated with the KANYE WEST mark.

**SEVENTH CLAIM**
**(Contributory Unfair Competition)**
**(Against Contributory Defendants)**

122.   Plaintiffs hereby repeat and reallege Paragraphs 1 through 121 of the Amended Complaint as if fully set forth herein.

123.   The COINYE WEST, COINYE and COYE marks are substantially similar to Plaintiff West's given name, Kanye West, and his KANYE WEST trademark.

124.   Consumers identify the mark KANYE WEST exclusively with Plaintiff Kanye West.

125.   These defendants' conduct as alleged herein is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Mr. West with these defendants' goods and/or services.

126.   Mr. West does not now and has never sponsored or approved or authorized these defendants' use of the COINYE WEST, COINYE or COYE marks.

127.   These defendants' conduct is willful and deliberate and done with the intent to unfairly commercially benefit from the goodwill association with Mr. West personally and the KANYE WEST brand name.

128.   These defendants have deliberately disregarded Plaintiffs' counsel's notification of the Infringing Websites and have otherwise consciously avoided learning about the full extent of the infringing activity that is continuing on the Infringing Websites.

129.   Upon information and belief, these defendants have materially encouraged, enabled, and contributed to the Infringing Websites by engaging in the operation, exchange, sale, transfer and/or purchase of COINYE cryptocurrency.

130.   The acts of these defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

131.   As a direct and proximate result of these defendants' actions as stated herein, Plaintiffs have suffered damage to their reputation and damage to the goodwill associated with the KANYE WEST mark.

## EIGHTH CLAIM
### (Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))
### (Against Defendants, Craig, Dave and Louis, Cacciamani, and McCord)

132.   Plaintiffs hereby repeat and reallege Paragraphs 1 through 131 of the Amended Complaint as if fully set forth herein.

133.   Plaintiffs own all rights, title and interest in and to the KANYE WEST mark.

134.   Upon information and belief, Defendants, Craig, Dave and Louis, Cacciamani, and McCord are the registrants of domains that are confusingly similar to Plaintiffs' distinctive and famous mark.

135.   Upon information and belief, Defendants registered the Infringing Websites with the bad faith intent to profit as evidenced by, *inter alia*: (i) their use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domains consist of a name that is associated with

Plaintiffs; (iii) Defendants are using the domains to perpetuate willful trademark infringement; and (iv) Defendants' infringing activities are commercial.

136.    Upon information and belief, Craig registered <coinyecasino.com> and <coinyecasino.18.lv> with the bad faith intent to profit as evidenced by, *inter alia*: (i) his use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domains consist of a name that is associated with Plaintiffs; (iii) Craig is using the domains to perpetuate willful trademark infringement; and (iv) Craig's infringing activities are commercial.

137.    Upon information and belief, Dave and Louis registered <pool.coinye.pw/>, <coinye.pw> and <coinye.suchpool.pw> with the bad faith intent to profit as evidenced by, *inter alia*: (i) their use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domains consist of a name that is associated with Plaintiffs; (iii) Dave and Louis are using the domains to perpetuate willful trademark infringement; and (iv) Dave and Louis' infringing activities are commercial.

138.    Upon information and belief, Cacciamani registered <coinye-exchange.com> with the bad faith intent to profit as evidenced by, *inter alia*: (i) his use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domain consists of a name that is associated with Plaintiffs; (iii) Cacciamani is using the domain to perpetuate willful trademark infringement; and (iv) Cacciamani's infringing activities are commercial.

139.    Upon information and belief, McCord registered <minecoinye.com>, <coinyemining.com>, <coinyegames.com>, <coinyewallet.com>, <coinyestore.com>, <buycoinyes.com>, <buycoinye.net>, <buy-coinye.com>, <betcoinye.com>, <coinyespin.com>, <coinyeroulette.com>, <coinyegambling.com>, <coinyepoker.com>, <coinye-dice.com>, <coinyedice.com>, <getcoinye.com>, <coinyeshop.com>, <freecoinye.com>, and

<fuckcoinye.com> with the bad faith intent to profit as evidenced by, *inter alia*: (i) his use of COINYE in the domains in willful disregard of Plaintiffs' rights; (ii) the domains consist of a name that is associated with Plaintiffs; (iii) McCord is using the domains to perpetuate willful trademark infringement; and (iv) McCord's infringing activities are commercial.

140.    Upon information and belief, Defendants, Craig, Dave and Louis, Cacciamani, and McCord committed these acts alleged herein willfully and with the intent to confuse the public and to injure Plaintiffs.

141.    The acts of Defendants, Craig, Dave and Louis, Cacciamani, and McCord have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

142.    As a direct and proximate result of Defendants', Craig's, Dave and Louis', Cacciamani's, and McCord's wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill. Defendants, Craig, Dave and Louis, Cacciamani, and McCord will continue to use, unless restrained, the COINYE WEST, COINYE and COYE marks or marks confusingly similar to the KANYE WEST mark and will cause irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining Defendants, Craig, Dave and Louis, Cacciamani, and McCord, their respective officers, agents, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

143.    Plaintiffs are further entitled to recover from Defendants, Craig, Dave and Louis, Cacciamani, and McCord the actual damages that they sustained and/or are likely to sustain as a result of their wrongful acts.

144.    Plaintiffs are further entitled to recover from Defendants, Craig, Dave and Louis, Cacciamani, and McCord the gains, profits and advantages that they have obtained as a result of their wrongful acts.

145.    Because of the willful nature of Defendants', Craig's, Dave and Louis', Cacciamani's, and McCord's wrongful acts, Plaintiffs' are entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

**NINTH CLAIM**
**(Federal Trademark Dilution, 15 U.S.C. § 1125(c))**
**(Against Defendants and Contributory Defendants)**

146.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 145 of the Amended Complaint as if fully set forth herein.

147.    Plaintiffs used the KANYE WEST mark to identify their goods and services before these defendants began promoting and offering goods and/or services under, or otherwise using, the COINYE WEST, COINYE and COYE  marks.  The KANYE WEST mark is inherently distinctive and has acquired distinction through Plaintiffs' extensive, continuous and exclusive use of the mark.

148.    The KANYE WEST mark is famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1), and was famous before these defendants adopted the COINYE WEST, COINYE and COYE marks.

149.    These defendants' use of the COINYE WEST, COINYE and COYE marks is likely to dilute the distinctive quality Plaintiffs' KANYE WEST mark in violation of 15 U.S.C. § 1125(c).

150.    These defendants' acts complained of herein are likely to damage Plaintiffs irreparably.

151.    Plaintiffs have no adequate remedy at law for such wrongs and injuries. The damage to Plaintiffs includes harm to their trademarks, goodwill and reputation that money cannot compensate.  Plaintiffs are, therefore, entitled to a preliminary and permanent injunction enjoining these defendants' use of the COINYE WEST, COINYE and COYE marks, or any marks dilutive of Plaintiffs' KANYE WEST mark in connection with the promotion, advertisement and sale of any goods, services or commercial activities by these defendants.

152.    Plaintiffs are further entitled to recover from these defendants for the actual damages sustained by Plaintiffs as a result of these defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages they have suffered by reason of these defendants' acts of dilution.

153.    Plaintiffs are further entitled to recover from these defendants the gains, profits and advantages these defendants have obtained as a result of their wrongful acts.  Plaintiffs are presently unable to ascertain the extent of the gains, profits and advantages these defendants have realized by reason of these defendants' willful acts of dilution.

154.    Because of the willful nature of these defendants' actions, Plaintiffs are entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118, including, but not limited to, treble damages.

### TENTH CLAIM
**(Deceptive Acts and Practices, New York General Business Law § 349)**
**(Against Defendants)**

155.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 154 of the Amended Complaint as if fully set forth herein.

156.   Upon information and belief, Defendants, without Mr. West's authorization or consent, and having knowledge of Plaintiffs' rights to the KANYE WEST mark, offer and/or will be offering goods for sale and/or rendering services on the Infringing Websites to the public in direct competition with Plaintiffs.

157.   Upon information and belief, Defendants' use of the KANYE WEST mark and Mr. West's image and likeness is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Websites, and is likely to deceive the public into believing that goods and/or services being offered for sale by Defendants originates from, is associated with, or is otherwise authorized by Mr. West.

158.   Upon information and belief, Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

159.   The acts of Defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

## ELEVENTH CLAIM
### (Dilution, New York Gen. Bus. L. § 360-l)
### (Against Defendants and Contributory Defendants)

160.   Plaintiffs hereby repeat and reallege Paragraphs 1 through 159 of the Amended Complaint as if fully set forth herein.

161.   Plaintiffs used the KANYE WEST mark to identify their goods and services before these defendants began promoting and offering goods and/or services under, or otherwise using, the COINYE WEST, COINYE and COYE   marks.   The KANYE WEST mark is inherently distinctive and has acquired distinction through Plaintiffs' extensive, continuous and exclusive use of the mark.

162.    The KANYE WEST mark is famous and distinctive within the meaning of New York Gen. Bus. L. § 360-l, and was famous before these defendants adopted the COINYE WEST, COINYE and COYE marks.

163.    These defendants' use of the COINYE WEST, COINYE and COYE marks is likely to dilute the distinctive quality Plaintiffs' KANYE WEST mark in violation of New York Gen. Bus. L. § 360-l.

164.    These defendants' acts complained of herein are likely to damage Plaintiffs irreparably.

165.    Plaintiffs have no adequate remedy at law for such wrongs and injuries. The damage to Plaintiffs includes harm to their trademarks, goodwill and reputation that money cannot compensate.  Plaintiffs are, therefore, entitled to a preliminary and permanent injunction enjoining these defendants' use of the COINYE WEST, COINYE and COYE marks, or any marks dilutive of Plaintiffs' KANYE WEST mark in connection with the promotion, advertisement and sale of any goods, services or commercial activities by these defendants.

166.    Plaintiffs are further entitled to recover from these defendants for the actual damages sustained by Plaintiffs as a result of these defendants' wrongful acts.  Plaintiffs are presently unable to ascertain the full extent of the monetary damages they have suffered by reason of these defendants' acts of dilution.

167.    Plaintiffs are further entitled to recover from these defendants the gains, profits and advantages these defendants have obtained as a result of its wrongful acts.  Plaintiffs are presently unable to ascertain the extent of the gains, profits and advantages these defendants have realized by reason of these defendants' willful acts of dilution.

168.   Because of the willful nature of these defendants' actions, Plaintiffs are entitled to all remedies under New York General Business Law.

## TWELTH CLAIM
### (Unjust Enrichment)
### (Against Defendants and Contributory Defendants)

169.   Plaintiffs hereby repeat and reallege Paragraphs 1 through 168 of the Amended Complaint as if fully set forth herein.

170.   These defendants have benefited from the unlawful and infringing use of the KANYE WEST trademark and Mr. West's image and likeness because, upon information and belief, they have derived and/or will derive substantial revenue from the sale of goods and/or the rendering of services offered and/or promoted on the Infringing Websites through the use of Mr. West's name, image and likeness.

171.   It would be against equity and good conscience to allow these defendants to retain the substantial revenue and profits they have realized and/or will realize through their blatantly unlawful use of Mr. West's name, image and likeness.

172.   These defendants have been unjustly enriched by its unlawful use of said name.

173.   The acts of these defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

174.   As a direct and proximate result of these defendants' actions as stated herein, Mr. West has suffered damage to his reputation and damage to the goodwill of the KANYE WEST trademark.  Further, Plaintiffs are entitled to exemplary damages as a result of these defendants' malicious actions as described above.

**THIRTEENTH CLAIM**
(Common Law Trademark Infringement)
(Against Defendants and Contributory Defendants)

175.   Plaintiffs hereby repeat and reallege Paragraphs 1 through 174 of the Amended Complaint as if fully set forth herein.

176.   These defendants have used in commerce, without Plaintiffs' permission, the COINYE WEST, COINYE and COYE marks in a manner that is likely to cause confusion, mistake or deception with respect to Plaintiffs' KANYE WEST mark, and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of Plaintiffs and/or their goods, services and commercial activities, on the one hand, with these defendants and/or their goods, services or commercial activities, on the other hand.

177.   These defendants' acts constitute infringement of the KANYE WEST mark in violation of the common law.

178.   As a direct and proximate result of these defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill.  These defendants will continue to use, unless restrained, the COINYE WEST, COINYE and COYE marks or marks confusingly similar to the KANYE WEST mark and will cause irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining these defendants, their respective officers, agents, and employees, and all persons acting in concert with these defendants, from engaging in further acts of infringement.

179.   Plaintiffs are further entitled to recover from these defendants the actual damages that they sustained and/or are likely to sustain as a result of these defendants' wrongful acts.

180.    Plaintiffs are further entitled to recover from these defendants the gains, profits and advantages that these defendants have obtained as a result of their wrongful acts.

181.    Because of the willful nature of these defendants' wrongful acts, Plaintiffs' are entitled to an award of punitive damages under the common law.

### FOURTEENTH CLAIM
#### (Common Law Unfair Competition)
#### (Against Defendants and Contributory Defendants)

182.    Plaintiffs hereby repeat and reallege Paragraphs 1 through 181 of the Amended Complaint as if fully set forth herein.

183.    Plaintiffs have expended substantial time, resources and effort to develop and obtain a strong reputation in the marketplace and enormous goodwill in the KANYE WEST mark.

184.    These defendants have infringed the KANYE WEST mark by using the confusingly similar COINYE WEST, COINYE and COYE marks.  These defendants' unlawful acts are intended to capitalize on Plaintiffs' goodwill for these defendants' own pecuniary gain.

185.    These defendants' use of the COINYE WEST, COINYE and COYE marks is calculated to and is likely to create confusion and to deceive and mislead consumers into believing that the Infringing Websites originated with or are authorized by Plaintiffs, and is likely to cause confusion as to the source of the content of the Infringing Websites, all to the detriment of Plaintiffs.

186.    These defendants' acts as alleged herein constitute unfair competition and will, unless enjoined by the Court, continue to result in harm to the goodwill associated with the KANYE WEST mark.

187.    Upon information and belief, these defendants committed the acts alleged herein willfully and with the intent to confuse the public and to injure Plaintiffs.

188.    The acts of these defendants have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

189.    As a direct and proximate result of these defendants' actions as stated herein, Mr. West has suffered damage to his reputation and damage to the goodwill of the KANYE WEST mark.  Further, Plaintiffs are entitled to exemplary damages as a result of these defendants' malicious actions as described above.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully request judgment against Defendants and Contributory Defendants, and their respective partners, agents, employees and attorneys, and any and all persons in active concert or participation with Defendants and/or Contributory Defendants, and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, business managers, accountants, attorneys, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing as follows:

1.    Preliminarily and permanently enjoining Defendants and Contributory Defendants, and their respective partners, agents, employees and attorneys, and any and all other persons in active concert or participation with Defendants and/or Contributory Defendants, and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders,

managers, business managers, accountants, attorneys, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing from (a) registering, operating, maintaining or using any website, blog, or Internet domain name or domain that uses the KANYE WEST mark, COINYE WEST mark, COINYE mark, COYE mark, or any colorable imitation of the marks KANYE WEST or KANYE, including but not limited to <coinyetheco.in>, <coinyewest.com>, <coinyeco.in>, <coinyefaucet.com>, <buycoinye.com>, <coinyecoin.org>, <coinyecoin.com>, <coinyechain.info>, <coinyecasino.com>, <coinyecasino.l8.lv>, <coinye-exchange.com>, <minecoinye.com>, <coinyemining.com>, <coinyegames.com>, <coinyewallet.com>, <coinyestore.com>, <buycoinyes.com>, <buycoinye.net>, <buy-coinye.com>, <betcoinye.com>, <coinyespin.com>, <coinyeroulette.com>, <coinyegambling.com>, <coinyepoker.com>, <coinye-dice.com>, <coinyedice.com>, <getcoinye.com>, <coinyeshop.com>, <freecoinye.com>, and <fuckcoinye.com>; (b) registering, operating and maintaining an "alt coin" digital currency or cryptocurrency site or network that uses the KANYE WEST mark, COINYE WEST mark, COINYE mark, COYE mark, or any colorable imitation of the marks KANYE WEST or KANYE, including, but not limited to, those contained in <coinyetheco.in>, <coinyewest.com>, <coinyeco.in>, <coinyefaucet.com>, <buycoinye.com>, <coinyecoin.org>, <coinyecoin.com>, <coinyechain.info>, <coinyecasino.l8.lv>, <coinye-exchange.com>, <coinyecasino.com>, <minecoinye.com>, <coinyemining.com>, <coinyegames.com>, <coinyewallet.com>, <coinyestore.com>, <buycoinyes.com>, <buycoinye.net>, <buy-coinye.com>, <betcoinye.com>, <coinyespin.com>, <coinyeroulette.com>, <coinyegambling.com>, <coinyepoker.com>, <coinye-dice.com>, <coinyedice.com>, <getcoinye.com>, <coinyeshop.com>, <freecoinye.com>, and <fuckcoinye.com>; (c) engaging

in the operation, exchange, sale, mining, transfer, purchase, storage or other use in commerce of an alt coin digital or cryptocurrency bearing any photographs or the name or likeness of Mr. West in any manner that is likely to cause confusion, mistake or to deceive the public into believing that the operation, exchange, sale, mining, transfer, purchase, storage or other use in commerce of the alt coin digital or cryptocurrency by Defendants originated with Mr. West or that there is any affiliation or connection between Plaintiffs and the operation, exchange, sale, mining, transfer, purchase, storage or other use in commerce of an alt coin digital or cryptocurrency by Defendants, and from otherwise competing unfairly with Plaintiffs; (d) assisting, aiding or abetting any other person or entity in the operation, exchange, sale, mining, transfer, purchase, storage or other use in commerce of an alt coin digital or cryptocurrency bearing COINYEWEST, COINYE or COYE as a trade name, trademark, brand name, as an Internet domain name, as a digital currency name, as a cryptocurrency, as an alt coin name, or in any other source-identifying manner; (e) using the KANYE WEST mark, or any other mark, term or title confusingly similar to the KANYE WEST mark, including, but not limited to, the COINYE WEST , COINYE and COYE marks;  (f) using any photographs, videos or the name or likeness of Mr. West in any manner that is likely to cause confusion, mistake or to deceive the public into believing that any website or domain registered by Defendants and/or Contributory Defendants originate with Plaintiffs or that there is any affiliation or connection between Plaintiffs and the websites, and from otherwise competing unfairly with Plaintiffs; and (g) representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive the public into believing that any goods or services, or website or domain registered by Defendants and/or Contributory Defendants originate with Plaintiffs or that there is any affiliation or connection between

Plaintiffs and the websites, and from otherwise competing unfairly with Plaintiffs;

2.     Awarding Plaintiffs damages in amount to be determined at trial, including compensatory, statutory damages and punitive damages;

3.     Awarding an accounting to Plaintiffs for the gains and profits of all defendants and for the damages sustained by Plaintiffs as a result of the willful, intentional and wrongful conduct of all defendants;

4.     Awarding Plaintiffs treble damages on account of the willful nature of all defendants' infringing acts for an amount to be determined at trial;

5.     Requiring all defendants to pay Plaintiffs their costs in this action, including reasonable attorneys' fees and costs; and

6.     Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 3, 2014

                    Respectfully submitted,

                    PRYOR CASHMAN LLP

                    Brad D. Rose (BR-2740)
                    Dyan Finguerra-DuCharme (DF-9228)
                    Madelon A. Gauthier (MG-4687)
                    Ryan S. Klarberg (RK-4719)
                    Pryor Cashman LLP
                    7 Times Square
                    New York, New York 10036
                    Telephone:  (212) 421-4100
                    Fax. (212) 326-0806
                    brose@pryorcashman.com
                    dfinguerra-ducharme@pryorcashman.com
                    mgauthier@pryorcashman.com
                    rklarberg@pryorcashman.com
                    *Attorneys for Plaintiffs Kanye West and Mascotte Holdings, Inc.*