UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KANYE WEST and MASCOTTE HOLDINGS, INC., | Civil Action No. 14 CV 250 |
| Plaintiffs, | |
| - against – | |
| DAVID P. McENERY, JR., ROBBIE E. C. A. HONTELE, HARRY WILLS, AL RA, JOHN DOES 1 through 50, IAIN CRAIG, 0DAYCOINS.COM, DAVE AND LOUIS d/b/a POOL.COINYE.PW, ALEX CACCIAMANI, RICHARD McCORD, PATRICK AUSTIN, MARTIN GASNER, XNIGMA.COM, BEEDUI, INC., and JANE DOES 1 through 50, | |
| Defendants. | |

# PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT HONTELE'S MOTION TO DISMISS

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
*Attorneys for Plaintiffs*

*Of Counsel:*
Brad D. Rose
Dyan Finguerra-DuCharme
Madelon Gauthier
Ryan S. Klarberg

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    A. Plaintiffs Enjoy Considerable Goodwill and
       Recognition in the Valuable KANYE WEST Mark ................................................3

    B. Defendants' Illegal Activities ................................................................................4

ARGUMENT.........................................................................................................................7

I.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FACTS
     DEMONSTRATING THAT JURISDICTION EXISTS OVER HONTELE ....................7

    A. Standards on Motion...............................................................................................7

    B. Plaintiffs Have Adequately Alleged That This Court Has
       Long Arm Jurisdiction Over Defendants Pursuant to CPLR § 302.............................8

    C. Jurisdiction Over Hontele Would Not Violate Due Process.........................................13

II.   IN THE ALTERNATIVE, PLAINTIFFS ARE ENTITLED TO LIMITED
     DISCOVERY ON THE FACTS REGARDING PERSONAL JURISDICTION ..............15

III.  SERVICE BY EMAIL WAS PROPER............................................................................15

    A. This Court Authorized Service By Email ...............................................................15

    B. Service by Email Comports With International Law...................................................16

    C. Service By Email Comports With Due Process..........................................................17

IV.  MR. WEST HAS MADE A PRIMA FACIE SHOWING OF
     TRADEMARK INFRINGEMENT, AMONG OTHER CLAIMS....................................18

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(s)**

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)........................................................................7, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................12, 14

*Capitol Records, Inc. v. Kuang Dyi Co. of RM*,
    No. 03-0520 (LAP), 2004 U.S. Dist. LEXIS 3305 (S.D.N.Y. Mar. 1, 2004)...................14

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010).....................................................................8, 12

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................12, 13

*Colour & Design v. U.S. Vinyl Mfg. Corp.*,
    No. 04 Civ. 8332 (MBM), 2005 U.S. Dist. LEXIS 10964 (S.D.N.Y. May 19,
    2005) ...............................................................................................8, 12

*Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion Gmbh & Co.*,
    150 F. Supp. 2d 566 (S.D.N.Y. 2001)..............................................................14

*FTC v. Pecon Software Ltd.*,
    Nos. 12 Civ. 7186 (PAE), 12 Civ. 7188 (PAE), 12 Civ. 7191 (PAE), 12 Civ. 7192
    (PAE), 12 Civ. 7195 (PAE), 2013 U.S. Dist. LEXIS 111375
    (S.D.N.Y. Aug. 7, 2013) .......................................................................16, 17

*Gurung v. Malhotra*,
    279 F.R.D. 215 (S.D.N.Y. 2011) .....................................................................17

*In re Hawker Beechcraft, Inc.*,
    486 B.R. 264 (S.D.N.Y. 2013)........................................................................17

*Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*,
    138 F. Supp. 2d 449 (S.D.N.Y. 2000)...............................................................11

*ISI Brands Inc. v. KCC International Inc.*,
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) ................................................................11

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................14

**CASES**                                                                       **PAGE(s)**

*Lechner v. Marco-Domo Internationales Interieur GmbH*,
    No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005)...........15

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ...................................................................................16

*McGraw-Hill Cos. v. Ingenium Technologies Corp.*,
    375 F. Supp. 2d 252 (S.D.N.Y. 2005).............................................................................13

*Philip Morris USA Inc. v. Veles Ltd.*,
    No. 06 CV 2988 (GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007).........17

*Pilates, Inc. v. Pilates Institute*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ............................................................................8, 13

*Tinsley v. ING Group*,
    Civ. A. No. 05-808-KAJ, 2006 U.S. Dist. LEXIS 8267 (D. Del. Mar. 3, 2006)..............17

*United States v. Lebanese Canadian Bank SAL*,
    285 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................................16

*Warner Brothers Entertainment Inc. v. Ideal World Direct*,
    516 F. Supp. 2d 261 (S.D.N.Y. 2007)...............................................................................7

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*,
    No. C 06-06572 JSW, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. Apr. 17, 2007)............18

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 297 (1980)................................................................................................14


**STATUTES**

N.Y. C.P.L.R. § 302.............................................................................................................12

N.Y. C.P.L.R. § 302(a) .............................................................................................2, 10, 11

N.Y. C.P.L.R. § 302(a)(1)............................................................................................... 8, 9

N.Y. C.P.L.R. § 302(a)(2).............................................................................................2, 11, 12

N.Y. C.P.L.R. § 302(a)(3)(i)................................................................................................11

N.Y. C.P.L.R. § 302(a)(3)(ii)........................................................................................2, 11

| **STATUTES** | **PAGE(s)** |
|---|---|

Fed. R. Civ. P. 4(f)(3) ...............................................................................................16

Fed. R. Civ. P. 12(b)(2) ...........................................................................................1, 18

Fed. R. Civ. P. 12(b)(5) .....................................................................................1, 18, 19

15 U.S.C. § 1114 ........................................................................................................10

Plaintiffs Kanye West and Mascotte Holdings, Inc. (collectively, "Plaintiffs" and/or "Mr. West") respectfully submit this Memorandum of Law in Opposition to Defendant Robbie E.C.A. Hontele's ("Hontele") Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(2) and Rule 12(b)(5) of the Federal Rules of Civil Procedure based on his assertion that this Court lacks personal jurisdiction and that service was improper. As will be shown below, the motion should be denied in its entirety.

## PRELIMINARY STATEMENT

The Amended Complaint sets forth valid and sustainable claims against Hontele, none of which should come as a surprise to him. Hontele, in concert with the other Defendants, chose to capitalize on the notoriety and goodwill associated with Mr. West's well-known name and likeness by developing, launching and/or maintaining a cryptocurrency called COINYE WEST.[1]

On January 7, 2014, the developer defendants had an initial public offering of a "block" of cryptocurrency called, interchangeably, COINYE WEST, COINYE and COYE on their website located at <coinyeco.in> (collectively the "COINYE cryptocurrency"). Am. Comp. ¶ 1. Soon thereafter, the original developer defendants abandoned ship, and Hontele became a part of the new team in charge of the COINYE cryptocurrency. That Hontele claims he had no part in the COINYE cryptocurrency is belied by his own admissions that Plaintiffs have obtained to date.

On a motion to dismiss, the factual allegations in the complaint are accepted as true. Because such motions usually are made prior to discovery, a plaintiff is required only to make a *prima facie* showing of personal jurisdiction. Hontele's motion and his self-serving e-mail to the Court ignore applicable law and his own email communications with Mr. West's counsel.

As set forth in the Amended Complaint, the Defendants, including Hontele, have transacted business in New York, including by marketing, promoting and offering COINYE cryptocurrency for mining to consumers in New York, thereby satisfying CPLR § 302(a). Because trademark infringement is a tort, marketing and promoting the COINYE cryptocurrency to New York consumers and providing a means for a New York user to mine cryptocurrency constitutes the commission of a tortious act within the state sufficient to vest this Court with personal jurisdiction over Defendants, thereby satisfying CPLR § 302(a)(2). Given that Mr. West is based in New York, those same acts -- regardless of where they may have taken place -- constitute the commission of tortious acts which have caused injury here in New York. Defendants, including Hontele, should reasonably have expected that their unauthorized use of the COINYE mark in connection with a cryptocurrency would have consequences in New York. Thus, jurisdiction pursuant to CPLR § 302(a)(3)(ii) is also satisfied.

The self-serving email that Hontele sent to the Court in connection with this motion does not set forth legitimate grounds for dismissal. Hontele merely claims (a claim not yet subject to discovery) that he does not live, work or have bank accounts in New York. Hontele's denial of work, residence or bank accounts is irrelevant. What is relevant is whether a person has so availed him or herself of the use of interstate commerce that acceptance of personal jurisdiction in a particular state is consistent with due process. In this case, Plaintiffs have sufficiently alleged that Hontele has purposefully engaged in interstate commerce. Plaintiffs have also sufficiently alleged that Hontele eagerly joined the COINYE cryptocurrency development team with full knowledge that the cryptocurrency would have an effect throughout the United States, including in New York. The long-arm statute for jurisdiction is expressly intended to apply to

---

[1] The term "Defendants" is defined as those individuals identified in the Amended Complaint, which includes Hontele.

non-domiciliaries. Thus, it is entirely just and proper that Hontele be called upon to answer for his infringing acts in New York regardless of his physical location.

## STATEMENT OF FACTS

**A.**     **Plaintiffs Enjoy Considerable Goodwill and**
         **Recognition in the Valuable KANYE WEST Mark**

Mr. West is an internationally renowned recording artist, performer, media company owner, inventor, songwriter, producer, film director and fashion designer. Am. Compl. ¶ 22. To date, Mr. West has released seven full-length studio albums, and sales of his songs have exceeded the 30 million mark in the United States, making him one of the best-selling digital artists of all-time. *Id.*

Mr. West is one of the most awarded artists of all-time. *Id.* at ¶ 23. His first six solo albums, all of which have gone platinum, have received numerous awards, including twenty-one Grammy® Awards. *Id.* Mr. West was ranked by *Billboard* magazine as one of the top 10 music producers of the decade, and was ranked third in BET's "Top Ten Rappers of the 21st Century" list. *Id.* These are just a few of the awards and accolades that Mr. West has earned. *Id.*

Mr. West's talent and notoriety is recognized around the world. *Id.* at ¶ 24. He has been named one of the 100 most influential people by *Time* magazine, and *Forbes* routinely lists Mr. West as one of the most successful people in the world. *Id.* Mr. West is credited with refocusing rap from hardcore-gangster themes to more accessible messages. *Id.* Mr. West's themes and styles have had a major impact on new artists such as Drake, Kid Cudi, and Lupe Fiasco, and he is recognized as transforming the hip hop industry making it more accessible to the public at large. *Id.*

Mr. West is the source of unsolicited media attention wherever he goes. *Id.* at ¶ 28. He has adorned the cover of dozens of magazines and has been the feature of hundreds of articles in

such publications as *The New York Times, Rolling Stone, Spin Magazine, Details, GQ, Time, Vibe* and *Complex*, among many others. *Id.* Few artists have acquired the fame achieved by Mr. West. *Id.*

The KANYE WEST brand is a strong commercial success. *Id.* at ¶ 33. In particular, goods and services offered for sale in connection with the KANYE WEST mark have generated sales in the hundreds of millions of dollars. *Id.* Mr. West and his media, Internet and fashion partners have spent millions of dollars advertising and promoting goods and services offered in connection with the KANYE WEST mark throughout the world. *Id.* at ¶ 34.

Mr. West has used the KANYE WEST® mark in connection with a wide variety of goods and services since at least as early as February 2004. *Id.* at ¶ 30. Mr. West owns numerous federal trademark registrations for the KANYE WEST mark throughout the world, including six in the United States. *Id.* & Am. Compl. at Ex. C.

**B.     Defendants' Illegal Activities**

In a deliberate attempt to profit from the goodwill associated with Mr. West and the KANYE WEST brand, and to "pump" up the value of its newly released cryptocurrency, the defendants are marketing, promoting, exploiting and mining cryptocurrency from various websites.[2] *Id.* at ¶ 44. In particular, on December 29, 2013, Defendants launched a website located at <coinyewest.com> and indicated their intention to offer a block of COINYE WEST coins for mining. *Id.* The <coinyewest.com> domain was later redirected to <coinyeco.in>, which the Defendants also used to market and promote their COINYE cryptocurrency. *Id.* Defendants subsequently registered and launched additional infringing websites to market and promote the COINYE WEST cryptocurrency, including <coinyetheco.in>, <coinyecoin.org>,

---

[2] Mr. West respectfully refers the Court to Paragraphs 36 through 42 of the Amended Complaint for the history of "cryptocurrency."

<coinyecoin.com>, and <coinyechain.info> (collectively, the "Infringing Websites"). Am. Comp. ¶ 44. The Infringing Websites have used the COINYE WEST, COINYE and COYE marks interchangeably in connection with the cryptocurrency.

The COINYE WEST, COINYE and COYE marks are substantially similar in sight, sound, meaning and commercial impression to the KANYE WEST mark. *Id.* at ¶ 50. Defendants use the COINYE WEST mark to solicit investors and to falsely imply that Mr. West is affiliated with, associated with or has endorsed the COINYE WEST cryptocurrency. *Id.* In fact, the developers have admitted that they intended to trade upon the goodwill associated with the KANYE WEST mark and with Mr. West personally when they adopted the COINYE WEST mark. *Id.*

In willful disregard of Mr. West's intellectual property rights, of which Defendants were on actual notice, Defendants modified the <coinyewest.com> and <coinyeco.in> websites and accelerated the launch date for the cryptocurrency from January 11, 2014 to January 7, 2014. *Id.* at ¶ 55. On January 14, 2014, Mr. West filed a Complaint against the exchanges that had been trading the COINYE cryptocurrency, the web hosting companies and servers and John and Jane Does 1 through 50, alleging claims of trademark infringement, unfair competition and dilution, among many others.

On January 23, 2014, Hontele emailed Mr. West's counsel as follows:

> *Dear sir/madam,*
>
> *I hereby identify myself as the user under the protected screen name of F1k on Freenode IRC.*
>
> ***Though I am considered as a part of the new 'devteam' on CoinyeCoin I do not possess the necessary technical skills to actually develop things related to CoinyeCoin. My skills are in the field of communication and parts of (copyright) law.***

*After the indictment of the original CoinyeWest Coindevelopers
and their re-branding of the project to CoinyeCoin they left the
project, where a number of volunteers picked up. **After reading the
news that the old devs decided to quit I wasted no time applying
for a position at the new team.***

*It has come to our attention that someone, claiming to be you and
claiming to act upon the request of Mr. West has sent an e-mail to
one of the CoinyeCoin exchanges. The exchange is currently taking
actions to prevent litigation, however, the bitcoin-community found
irregularities. The signature in the e-mail does not match the
signature we have on file for you[1].*

*You must understand that there are a lot of jokers trying to
impersonate Mr. West and/or his lawyers in an attempt to have
their way with us. Since in this case a signature was present we felt
obligated to at least inform you that someone is using this name
with these two signatures.*

***If you are indeed representing Mr. West in this case and wish to
address the devteam behind Coinye and Coinyetheco.in, you may
address me. You will understand that to verify your identity I will
need a letter sent via the postal service, addressed to me at home
in Zoetermeer, The Netherlands.***

*Until I can verify your identity as Mr. West's representative I
simply cannot comply with any order directed at me via E-mail or
phone.*

*Stichting BREIN, located in Hoofddorp, The Netherlands,
embodies the local Dutch anti-piracy outfit. Should you require
help in forwarding your requests you can contact them using the
information provided on their website [2].*

*Should you have any further questions, please, do not hesitate to
contact me.*

*Yours Sincerely,*

*Robbie E. C. A. Hontelé
Available mon-fri 09:00 - 18:00
Amsterdam time-zone GMT+1*

*[1] http://puu.sh/6v75T.png
[2] http://anti-piracy.nl/contact.php*

*- --*
*Robbie Hontelé*
*+316 33 90 65 66*
*R.Hontele@gmail.com*
*http://www.linkedin.com/in/robbiehontele*

A true and correct copy of this email is attached hereto as Exhibit A.

Based upon this email, Mr. West named Hontele as a defendant in the Amended Complaint filed on March 3, 2014. Mr. West alleged: "Upon information and belief, Defendant Robbie E. C. A. Hontele is affiliated with the promotion, mining and/or development of the COINYE cryptocurrency and/or the <coinyetheco.in> website." Am. Comp. ¶ 47. Hontele is also included in the definition of "Defendants" throughout the Amended Complaint and is believed to be a direct infringer.

To date, Defendant Harry Wills and Defendant Richard McCord have both consented to a Permanent Injunction on Consent in which these Defendants agreed to be enjoined from, *inter alia*, registering, operating, or maintaining any website, blog, Internet domain name, alt coin digital currency or cryptocurrency website that uses the KANYE WEST mark, COINYE WEST mark, COINYE mark, COYE mark, or any colorable imitation of the marks KANYE WEST or KANYE. Plaintiffs have offered the same Permanent Injunction on Consent to Hontele. Mr. Hontele has refused to sign it.

## ARGUMENT

### I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FACTS DEMONSTRATING THAT JURISDICTION EXISTS OVER HONTELE

#### A. Standards on Motion

On this pre-discovery motion to dismiss, Plaintiffs need to "'persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) (quoting *Ball v.*

*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). This Court must construe all allegations in the light most favorable to the Plaintiffs, resolving all doubts in Plaintiffs' favor. *Id.; Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332 (MBM), 2005 U.S. Dist. LEXIS 10964, at *2 (S.D.N.Y. May 19, 2005) (denying motion to dismiss of president and CEO, where plaintiff had made *prima facie* showing of jurisdiction). Furthermore, a plaintiff is found to have met "his or her burden even if the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's prima facie case." *Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995) (citation omitted).

Here, the law of New York as the forum state controls whether Defendants are subject to personal jurisdiction. This Court applies a two-part analysis to determine whether to exercise personal jurisdiction over a non-domiciliary: first, the Court analyzes the existence of jurisdiction under New York law; second, the Court considers whether the exercise of jurisdiction under state law satisfies federal due process requirements. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010). In determining the strength of the contacts under both Section 302(a)(1) and the due process clause, courts assess the totality of a defendant's contacts with the forum state. *Id.* These standards are met here.

### B.   Plaintiffs Have Adequately Alleged That This Court Has Long Arm Jurisdiction Over Defendants Pursuant to CPLR § 302

The Amended Complaint asserts the *prima* facie elements of each of Plaintiffs' claims -- and of personal jurisdiction -- against each of the defendants, directly. The Amended Complaint contains the following allegations, *inter alia*, against Hontele specifically and Hontele defined as part of the "Defendants" (*i.e.* the direct infringers):

- Upon information and belief, Defendant Robbie E. C. A. Hontele is a citizen of Netherlands and is engaged in commerce in the United States including within this judicial district. Am. Comp. ¶ 5.

- This Court has personal jurisdiction over Defendants and Contributory Defendants because they are doing business in New York, the claims at issue arise out of their transaction of business and/or supplying goods and services directed to consumers residing in New York. These activities fall within the long-arm statute of the State of New York, CPLR § 302(a)(1). *Id.* at ¶ 20.

- In a deliberate attempt to profit from the goodwill associated with Mr. West and the KANYE WEST brand and to "pump" up the value of its newly released cryptocurrency, Defendants are marketing, promoting, exploiting and/or mining cryptocurrency from websites located at <coinyetheco.in>, <coinyewest.com>, <coinyeco.in>, <coinyecoin.org>, <coinyecoin.com>, and <coinyechain.info> (the "Infringing Websites"). In particular, on December 29, 2013, Defendants launched a website located at <coinyewest.com> and indicated their intention to offer a block of COINYE WEST coins for mining. The <coinyewest.com> domain was later redirected to <coinyeco.in>. Defendants soon thereafter launched <coinyetheco.in>, from which Defendants are currently marketing and promoting their cryptocurrency. Defendants have specifically stated that their "goal with COINYE WEST is to make it easier for people to use cryptocurrency." Am. Comp. ¶ 44.

- Upon information and belief, the <coinyetheco.in> website is the primary COINYE cryptocurrency website, which states that "Coinyecoin [COYE]" is the "Cryptocurrency of 2014." The <coinyetheco.in> homepage asserts in large font, "Contrary to popular media opinion, we are not dead [sic] We are working hard to bring you some exciting new additions!" *Id.* at ¶ 46.

- Upon information and belief, Defendant Robbie E. C. A. Hontele is affiliated with the promotion, mining and/or development of the COINYE cryptocurrency and/or the <coinyetheco.in> website. *Id.* at ¶ 47.

- The COINYE WEST, COINYE and COYE marks are substantially similar in sight, sound, meaning and commercial impression to the KANYE WEST mark. Defendants use the COINYE WEST, COINYE and COYE marks to solicit investors and to falsely imply that Mr. West is affiliated with, associated with and/or has endorsed the COINYE cryptocurrency. In fact, the developers have admitted that they intended to trade upon the goodwill associated with the KANYE WEST mark and with Mr. West personally when they adopted the COINYE WEST, COINYE and COYE marks. *Id.* at ¶ 50.

- In willful disregard of Mr. West's intellectual property rights, of which Defendants were on actual notice, Defendants modified the <coinyewest.com> and <coinyeco.in> websites and rescheduled the launch date for the cryptocurrency from January 11, 2014 to January 7, 2014. A true and correct copy of the <coinyewest.com> website as of January 5, 2014 is attached hereto as Exhibit G, and a true and correct copy of the <coinyewest.com> website as of January 7, 2014 is attached hereto as Exhibit H. Upon information and belief,

Defendants launched websites located at <coinyetheco.in>, <coinyefaucet.com>, <coinyecoin.org> and <coinyecoin.com> to further market and promote their infringing activities. *Id.* at ¶ 55.

- These defendants have used in commerce, without Plaintiffs' permission, the COINYE WEST, COINYE and COYE marks in a manner that is likely to cause confusion, mistake or deception with respect to Plaintiffs' KANYE WEST mark, and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of Plaintiffs and/or their goods, services and commercial activities, on the one hand, with these defendants and/or their respective goods, services or commercial activities, on the other hand. *Id.* at ¶ 83.

- These defendants' acts constitute infringement of the KANYE WEST mark under 15 U.S.C. § 1114. Am. Comp. ¶ 84.

- As a direct and proximate result of these defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill. These defendants will continue to use, unless restrained, the COINYE WEST, COINYE and COYE marks or marks confusingly similar to the KANYE WEST mark and will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining these defendants, their respective officers, agents, and employees, and all persons acting in concert with these defendants, from engaging in further acts of infringement. *Id.* at ¶ 85.

The law is clear that the allegations set forth above, construed in the light most favorable to Plaintiffs, are more than sufficient to make out a *prima facie* showing of long-arm jurisdiction over Hontele.

CPLR § 302(a) provides for exercise of personal jurisdiction over any non-domiciliary who, in person or through an agent: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state ...;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . .," if he (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The

specific allegations of the Amended Complaint concerning Hontele satisfy New York's long arm statute.

Specifically, Hontele has transacted business in New York, including by marketing, promoting and offering the COINYE cryptocurrency for mining to consumers in New York, thereby satisfying CPLR § 302(a). Because trademark infringement is a tort, marketing and promoting the COINYE cryptocurrency to New York consumers and providing a means for a New York user to mine cryptocurrency constitutes the commission of a tortious act within the state sufficient to vest this Court with personal jurisdiction over Defendants, thereby satisfying CPLR § 302(a)(2). Given that Mr. West is based in New York, those same acts -- regardless of where they may have taken place -- constitute the commission of tortious acts which have caused injury here in New York. *See* CPLR § 302(a)(3)(i). Hontele should reasonably have expected that his unauthorized use of the COINYE mark in connection with a cryptocurrency would have consequences in New York. Thus, jurisdiction pursuant to CPLR § 302(a)(3)(ii) is also satisfied.

Moreover, in the context of the Internet, courts apply a "sliding scale test" based on the level of a website's interactivity. A website that merely provides information that is accessed by individuals in New York does not form a basis for personal jurisdiction. *See, e.g., ISI Brands Inc. v. KCC Int'l Inc.,* 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006). In contrast, courts find that a website operator is "transacting business" in New York, and therefore subject to personal jurisdiction, where a website is interactive and allows consumers in New York to purchase products. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.,* 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.") (citation omitted).

Without doubt, the <coinyetheco.in> website is interactive. The sole purpose of that website is to facilitate the mining of COINYE cryptocurrency. Indeed, there is nothing passive about the <coinyetheco.in> website. Thus, Hontele has admitted that, at the very least, he is affiliated with an interactive website which markets, promotes and offers for mining COINYE cryptocurrency, and the <coinyetheco.in> interactive website is directed at residents of the United States, including residents of New York. *See Colour & Design*, 2005 U.S. Dist. LEXIS 10964, at *4 ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers" pursuant to CPLR § 302(a)(2) (citation and quotations omitted)); *Citigroup Inc. v. City Holding Co.,* 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) (mailings to New York residents displaying plaintiffs' trademarks constituted allegedly tortious conduct occurring in New York because that is where the marks were received and viewed by the recipients).

Hontele's argument that he "never set foot in the United States" has no bearing on whether he is subject to personal jurisdiction in New York. A party need not be physically present in the state for the court to obtain personal jurisdiction. CPLR § 302 contains no requirement of physical presence in New York, it just requires that acts have foreseeable *consequences* in New York. *Chloe*, 616 F.3d at 169. As the Supreme Court noted in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* at 476.

In an email sent immediately following service of the original Complaint, Hontele boldly directs Plaintiffs' counsel that if he "wish[es] to address the devteam behind Coinye and Coinyetheco.in, you may address me." *See* Ex. A. Through this admission, Hontele has established that he has a direct connection to the master website -- <coinyetheco.in> is the website which allowed consumers to mine COINYE cryptocurrency. Hontele's notion that he can freely infringe or facilitate infringements around the world without being called to account for his actions where his actions have real consequence is in direct contradiction of the New York long arm statute. "[W]hen the tort alleged is infringement, the physical presence of the defendant is not required for the tort to be viewed -- for the purposes of conferring jurisdiction -- as having occurred in New York." *Pilates, Inc.*, 891 F. Supp. at 182 (citations omitted).

Hontele expected or should reasonably have expected that his involvement with the main website for the mining of COINYE cryptocurrency would have consequences in New York. *See, e.g., McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York."); *Citigroup Inc.*, 97 F. Supp. 2d at 568 (finding it reasonably foreseeable that publication of websites with offending marks would have consequences in New York). Accordingly, Plaintiffs have sufficiently pleaded facts to support this Court's jurisdiction over Hontele.

## C. Jurisdiction Over Hontele Would Not Violate Due Process

Plaintiffs have sufficiently alleged facts against Hontele such that exercising jurisdiction over him in this case will not violate due process. Hontele's participation with the Infringing Websites and/or supervision of the acts of the "devteam" more than suffice to establish "minimum contacts" with New York -- the second prong of the jurisdictional inquiry. Minimum

contacts exist when a defendant's "'conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'" *Burger King Corp.*, 471 U.S. at 474, <u>quoting</u> *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In New York, a finding that one is subject to personal jurisdiction under Section 302 necessarily requires a finding that due process standards are satisfied. *See Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion Gmbh & Co.*, 150 F. Supp. 2d 566 (S.D.N.Y. 2001); *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03-0520 (LAP), 2004 U.S. Dist. LEXIS 3305, at *7 (S.D.N.Y. Mar. 1, 2004).

Hontele's knowledge and/or control of, consent to, and financial benefit from, the mining of COINYE cryptocurrency should have caused Hontele to reasonably anticipate being haled into court in New York. Hontele's affiliation with the <coinyetheco.in> website should have also caused Hontele to reasonably anticipate being haled into court in New York, since both the COINYE cryptocurrency and the <coinyetheco.in> website are directed towards United States residents, including New York residents.

Based on Hontele's' own admissions, he: (a) "wasted no time applying for a position at the new team" "after reading the news that the old devs decided to quit"; (b) is the representative of the "new devteam" to whom all inquiries should be addressed; and (c) demanded that Plaintiffs' counsel verify their identity before he communicated further about the legal issues. *See* Ex. A. For these reasons, there can be no doubt that the exercise of jurisdiction over Hontele comports with "'traditional notions of fair play and substantial justice,'" satisfying the requirements of due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). There is nothing even remotely compelling about Hontele's

objections to jurisdiction in New York. Accordingly, Hontele's motion to dismiss based on lack of personal jurisdiction should be denied.

## II.   IN THE ALTERNATIVE, PLAINTIFFS ARE ENTITLED TO LIMITED DISCOVERY ON THE FACTS REGARDING PERSONAL JURISDICTION

It is respectfully submitted that Plaintiffs have more than satisfied their burden of setting forth a *prima facie* basis for personal jurisdiction over Hontele. However, should this Court conclude that there are factual questions warranting further inquiry or has not been persuaded by the factual showing provided by Plaintiffs without the benefit of discovery, Plaintiffs respectfully request that the Court grant limited discovery regarding the jurisdictional facts. Where a plaintiff has made a threshold, non-frivolous showing of jurisdiction, courts routinely exercise their discretion to order discovery on the jurisdictional issue (if need be). *See, e.g., Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, at *15 (S.D.N.Y. Mar. 10, 2005) (granting 60 days of limited jurisdictional discovery; denying motion to dismiss for lack of personal jurisdiction and motion to dismiss for failure to state claim).

## III.   SERVICE BY EMAIL WAS PROPER

### A.   This Court Authorized Service By Email

On January 14, 2014, this Court "ordered that Plaintiffs may serve all legal documents on defendants and third parties by email at email addresses that Plaintiffs ascertain to be valid and operational." ECF No. 3. Thus, this Court has already authorized Plaintiffs to serve Defendants via email, and Hontele's 12(b)(5) "motion" can be denied on this basis alone. Even if the Court were to revisit its decision, the Court's decision to allow Plaintiffs to serve Hontele by email was appropriate.

**B.**     <u>Service by Email Comports With International Law</u>

Under Rule 4(f)(3) of the Federal Rules of Civil Procedure, a plaintiff may serve a foreign defendant by alternative methods, as long as the means are directed by the court and are not prohibited by international agreement. The methods of service must also comport with due process and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (citations omitted); *see also FTC v. Pecon Software Ltd.*, Nos. 12 Civ. 7186 (PAE), 12 Civ. 7188 (PAE), 12 Civ. 7191 (PAE), 12 Civ. 7192 (PAE), 12 Civ. 7195 (PAE), 2013 U.S. Dist. LEXIS 111375, at *8 (S.D.N.Y. Aug. 7, 2013) (finding service by email to defendant residing in India comports with international law). Rule 4(f)(3) provides the Court and the parties with broad flexibility in obtaining service where conventional service is not appropriate or timely. Service under Rule 4(f)(3) is neither a last resort nor extraordinary relief, but merely one of several ways to serve process on an international defendant. *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 265-66 (S.D.N.Y. 2012). The decision whether to authorize service under Rule 4(f)(3) is left to the sound discretion of the court. *Id.* at 266.

The United States and the Netherlands are signatories to the Hague Service Convention. Article 2 of the Hague Service Convention requires all judicial documents in civil matters to be served through a Central Authority. *See* Hague Service Convention, Art. 2. Article 10, however, allows for service of process through means other than the signatory's Central Authority as long as the destination State does not object to those means. Hague Service Convention, Art. 10. Specifically, Article 10(a) allows a party to send judicial documents, by postal channels, directly to persons abroad provided that the State of destination does not object. *Id.* Relevant to the case

at hand, the Netherlands has not objected to sending judicial documents by "postal channels." *Tinsley v. ING Grp.,* Civ. A. No. 05-808-KAJ, 2006 U.S. Dist. LEXIS 8267, at *1 (D. Del. Mar. 3, 2006) (allowing service by alternative means on Netherlands corporation); *see also In re Hawker Beechcraft, Inc.,* 486 B.R. 264, 283 (S.D.N.Y. 2013) (allowing service on Netherlands defendant by overnight courier). Thus, it was within the power of the Court to allow alternative service by email upon a resident of the Netherlands.

Service by email is not only permissible, but it is the only method to provide Hontele with notice of future filings and thus comports with due process. Hontele has never provided Plaintiffs with a physical address despite his demand that he "will need a letter sent via the postal service, addressed to me at home in Zoetermeer, The Netherlands." *See* Ex. A. Instead, Hontele has consistently used email to communicate with the Court and Plaintiffs' counsel. On January 23, 2014, Hontele sent an email to Plaintiffs' counsel using the email address r.hontele@gmail.com and directing counsel to communicate directly with him if counsel wished "to address the devteam behind Coinye and Coinyethco.in." *See* Ex. A. Hontele used the same Gmail address to file the instant "motion" on April 16, 2014. ECF No. 60. Under circumstances such as these, where the plaintiff establishes that the email address is valid, courts have consistently held that service by email does not violate any international agreement. *Pecon Software,* 2013 LEXIS 111375 at 12-13; *Philip Morris USA Inc. v. Veles Ltd.,* No. 06 CV 2988 (GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) (collecting cases authorizing email service).

### C.    Service By Email Comports With Due Process

Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant. *Gurung v. Malhotra,* 279 F.R.D. 215, 219 (S.D.N.Y.

2011); *see also Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C 06-06572 JSW, 2007 U.S. Dist. LEXIS 31299, at \*4-5 (N.D. Cal. Apr. 17, 2007) (authorizing service by email where plaintiff has established that the email accounts have been effective means of communicating with defendants).    Here, the Court has first-hand knowledge that email sent to the r.hontele@gmail.com account reaches Hontele.  Hontele filed his "motion" via email using this Gmail account, and the Court's order was sent to Hontele via email.  ECF No. 60.

Accordingly, service by email is proper, and Hontele's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) should be denied.

## IV.    MR. WEST HAS MADE A PRIMA FACIE SHOWING OF TRADEMARK INFRINGEMENT, AMONG OTHER CLAIMS

In its April 17, 2014 Order, this Court ordered that: "The Court construes Hontele's e-mail as a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5)."  ECF No. 60.  Accordingly, Plaintiffs' opposition is limited to those "prongs" of Hontele's motion.

Plaintiffs note, however, that, to the extent that Hontele takes issue with the merits of claims asserted against him, these claims have been more than sufficiently alleged in the Complaint against him.  For example, Plaintiffs have alleged that Hontele has (1) "used Mr. West's name, image and likeness within the State of New York for advertising and/or for the purposes of trade" . . . "without the written or oral authorization of Mr. West or anyone authorized by him to give such authorization," which "has caused injury to [Mr. West]" (Am. Compl. ¶¶ 74-76); (2) "used in commerce, without Plaintiffs' permission, the COINYE WEST, COINYE and COYE marks in a manner that is likely to cause confusion, mistake or deception with respect to Plaintiffs' KANYE WEST mark, and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of

Plaintiffs and/or their goods, services and commercial activities, on the one hand, with [Hontele's] and/or [his] respective goods, services or commercial activities, on the other hand," which has caused Plaintiffs to "suffer damage to their trademarks, business reputation and goodwill" (*Id.* at ¶¶ 83-85); and (3) engaged in conduct that "is willful and deliberate and done with the intent to unfair commercially benefit from the goodwill association with Mr. West personally and the KANYE WEST brand name . . . causing great and irreparable harm and damage to Plaintiffs" (*Id.* at ¶ 106-07). Defendants, including Hontele, obviously trade upon not only the KANYE WEST trademark and Mr. West's personal notoriety, but also explicitly use his likeness and themes associated with Mr. West. Indeed, Hontele intends to exploit that association to drive market demand for the COINYE cryptocurrency. Plaintiffs have adequately pleaded facts to support their claims and entitlement for relief against Hontele.

In compliance with the Court's April 17th Order, Plaintiffs have not fully briefed this issue. Should the Court wish to consider any such arguments, Plaintiffs reserve the right to respectfully request leave to formally address any arguments the Court wishes to consider.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court deny Hontele's motion to dismiss in its entirety.

Dated: New York, New York
      May 8, 2014

Respectfully submitted,

PRYOR CASHMAN LLP

Brad D. Rose (BR-2740)
Dyan Finguerra-DuCharme (DF-9228)
Madelon Gauthier (MG-4687)
Ryan S. Klarberg (RK-4719)
7 Times Square
New York, New York 10036
Tel. (212) 421-4100
Fax. (212) 326-0806
brose@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com
mgauthier@pryorcashman.com
rklarberg@pryorcashman.com

*Attorneys for Plaintiffs Kanye West and Mascotte Holdings Inc.*